# Schenley *versus* City of Pittsburgh.

1. An executory contract of sale providing for a future conveyance is superseded by and merged in the subsequent deed.

2. A city plan referred to in a deed is made a part of it, and cannot be controlled by the general language of the deed, calling for natural monuments as boundaries of the premises conveyed.

3. In January 1784, A. made an agreement with B. for the sale of a piece of land bounded on two sides by the Monongahela and Allegheny rivers; the agreement providing for the execution of a deed therefor within one year. Within that time A. executed and delivered a deed to B. referring to a general plan of town lots and conveying some thirty-two of them "situate in a point formed by the junction of the two rivers Monongahela and Allegheny," and stating the bounds of said lots to be the said rivers. The lots as laid out on this plan did not extend to the river fronts, but to open streets laid out along it. In an ejectment by C., who derived title from B., against the city of Pittsburgh, which was in possession of the land lying between the said lots and the said rivers :

*Held*, that the plaintiff had shown no right of possession to this intervening land, and that a non-suit was properly entered by the court below.

October 30th 1883. Before Mercur, C. J., Gordon, Paxson, Sterrett, Green and Clark, JJ. Trunkey, J., absent.

Error to the Court of Common Pleas No. 1 of *Allegheny county :* Of October Term 1883, No. 97.

This was an action of ejectment by Mary E. Schenley

against the city of Pittsburgh, to recover possession of a lot of ground in the first ward of said city. Plea, not guilty.

At the trial, before STOWE, P. J., title was admitted to have been in John Penn and John Penn, Jr., in January 1784.

The plaintiff's title rested in main upon the following agreement, which was put in evidence :

Memorandum of agreement made and agreed upon between John Penn, Jr., and John Penn, both of the city of Philadelphia, esquires, of the one part, and Isaac Craig and Stephen Bayard, both of the said city, esquires, of the other part, as follows: The said John Penn, Jr., and John Penn, have this day contracted with, and sold to the said Isaac Craig and Stephen Bayard, a certain tract of land situate in Washington county, and in that part of this manor of Pittsburgh is west of Monongahela, and opposite the junction of that river with the Allegheny, beginning on the bank of the river twenty-five perches below the place where the old French hospital stood ; from thence extending eighty perches up the river ; thence extending up the coal hill fifty-four perches, from thence parallel with and opposite to the first line eighty perches, and from thence fifty-four perches to the place of beginning, containing twenty-five acres and the usual allowance for a road that is now along the bank of the river ; and also a certain other small piece of land situate in Westmoreland county, in their manor of Pittsburgh, lying and being in a point formed by the junction of the rivers Monongahela and Alagaine. Bounded on two sides of the rivers aforesaid, on a third side by the top or ditch of Fort Pitt, continued from the Monongahela to the salient angle of the north-east bastion, and from thence on the other side of a ditch, out to the Allegheny, containing about three acres more or less, with the appurtenances, for such a consideration or sum of money as the said John Penn, Jr., and John Penn shall at any time within one year from this time, bona fide, sell the same quantity of their said manor land for, adjoining the said hereby bargained premises, respectively, to any person or persons whatsoever. The said Isaac Craig and Stephen Bayard do now pay to the said John Penn, Jr., and John Penn, on the account of the said premises, the sum of twenty-five pounds specie, of gold and silver, for which a receipt is hereon endorsed. The said John Penn, Jr., and John Penn, do hereby, respectively, covenant and agree that within the said one year by patent or patents, deed or deeds, to grant and convey the said bargained premises to the said Isaac Craig and Stephen Bayard, their heirs and assigns, in severalty forever, as tenants in common, they paying all expenses for writing, and also paying to them, the said John Penn, Jr., and John Penn, the remainder of the consideration money, which

shall then appear to be coming to them for the said bargained premises. The said John Penn, Jr., and John Penn, do also agree that the said Isaac Craig and Stephen Bayard shall, and may take immediate possession of the said bargained premises, and receive the rents and profits thereof to their own use; for the true performance of all and singular the covenants and agreements aforesaid, the said parties hereto mutually bind themselves, their heirs, executors and administrators, each unto the other of them in the penalty of three hundred pounds, gold or silver money, firmly by these presents to be paid by the defaultive party to the party complying.

In witness whereof, the said parties to these presents have interchangeably set their hands and seals this twenty-second day of January, in the year of our Lord one thousand seven hundred and eighty-four.

|                                  | John Penn, Jr. [Seal.]   |
|----------------------------------|--------------------------|
| Sealed and delivered in the      | John Penn, [Seal.]       |
| presence of us:                  | Isaac Craig, [Seal.]     |
| Mary Allen.     J. Cerund.       | Stephen Bayard, [Seal.]  |

Received at the time of executing this instrument of writing of the named Isaac Craig and Stephen Bayard, the sum of twenty-five pounds, as therein specified to be paid on account of the bargained land and premises.

Test:                                    John Penn.
Mary Allen.          J. Cerund.

And it is further agreed that Major Isaac Craig and Colonel Stephen Bayard shall have the right prenition to the land enclosed within the pans and rampart of Fort Pitt with the appurtenances as soon as the Garrison is within from that part.

John Penn.
John Penn.

Recorded October 31st 1785, in Washington county, in Deed Book A, page 525.

The plaintiff then offered in evidence the following deed from the Penns to Craig and Bayard, recorded November 1st 1785, in Westmoreland county, in Deed Book D, 4, 299, &c., and on September 11th 1795 in Allegheny county.

This Indenture made the thirty-first day of December, in the year of our Lord one thousand seven hundred and eighty-four, between John Penn, Junior, and John Penn, of the city of Philadelphia, in the Commonwealth of Pennsylvania, esquires, late proprietaries of Pennsylvania, of the one part, and Major Isaac Craig and Colonel Stephen Bayard, both of the town of Pittsburgh, in the county of Westmoreland in Pennsylvania aforesaid, of the other part, witnesseth: That the said John Penn, Junior, and John Penn, for and in consideration of the sum of four hundred and eleven pounds, five shillings,

lawful silver money of Pennsylvania unto them, at or before the sealing and delivery hereof by the said Isaac Craig and Stephen Bayard well and truly paid, the receipt whereof is hereby acknowledged, have granted, bargained, sold, released and confirmed, and by these presents do grant, bargain, sell, release and confirm unto the said Isaac Craig and Stephen Bayard, and to their heirs and assigns, thirty-two lots or pieces of ground, situate in a point formed by the junction of the two rivers, Monongahela and Allegheny, in the town of Pittsburgh aforesaid, marked in the general plan of the said town made by Colonel Geo. Woods, number one, two, three, four, five, six, seven, eight, nine; number ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen; one hundred and thirty-two, one hundred and thirty-three, one hundred and thirty-four, one hundred and thirty-five, one hundred and thirty-six, one hundred and thirty-seven, one hundred and thirty-eight, one hundred and thirty-nine, one hundred and forty, one hundred and forty-one, one hundred and forty-two, one hundred and forty-three, one hundred and forty-four, one hundred and forty-five, and two hundred and sixty, and which said plan is recorded, or intended to be recorded, in the office for recording of deeds for the county of Westmoreland; the said lots of ground, number one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen and seventeen are bounded, northwardly, by the said Allegheny river; eastwardly, by Marbury street; southwardly, by Penn street, and south-westwardly, by the said Monongahela river; the said lots of ground, number one hundred and thirty-two, one hundred and thirty-three, one hundred and thirty-four, one hundred and thirty-five, one hundred and thirty-six, one hundred and thirty-seven, one hundred and thirty-eight, one hundred and thirty-nine, one hundred and forty, one hundred and forty-one, one hundred and forty-two, one hundred and forty-three, and one hundred and forty-four are bounded, south-westwardly, by the said Monongahela river; northwardly, by the said Penn street; eastwardly, by the said Marbury street, and southwardly, by Liberty street, and the lot of ground marked number one hundred and forty-five, being bounded, south-westwardly, by the said Monongahela river; northwardly, by Liberty street; north-eastwardly, by Front street, and southeastwardly, by West street; and the lot number two hundred and sixty being bounded, northward, by Liberty street; southeastward, by West street, and south-westward, by Front street; together with all and singular the rights, members and appurtenances whatsoever to the said thirty-two lots or pieces of ground hereby granted severally and respectively thereunto belonging or in any wise appurtaining. To have and to hold the said thirty-

[Schenley *v.* Pittsburgh.]

two lots or pieces of ground, hereditaments and premises hereby granted or mentioned to be granted, in manner following, that is to say : One full, equal and undivided moiety or half thereof, with the respective appurtenances, unto the said Isaac Craig, his heirs and assigns, to and for the only proper use and behoof of the said Isaac Craig, his heirs and assigns forever. And the other like moiety or equal and undivided half part thereof with the respective appurtenances unto the said Stephen Bayard, his heirs and assigns, to and for the only proper use and behoof of the said Stephen Bayard, his heirs and assigns, forever. In witness whereof the said parties have interchangeably set their hands and seals hereunto, dated the day and year first above written." (Duly executed, &c.)

Wood's plan, alluded to in this deed, was offered in evidence as follows :

PART OF
WOOD'S PLAN
OF
PITTSBURGH

[Schenley v. Pittsburgh.]

"Wood's plan" is recorded in Allegheny county and is indorsed : "Plan of town of Pittsburgh, laid out May 1784 ; original draft kept by Thomas Vickroy. This draft presented to the city of Pittsburgh December 16th 1841. THOMAS VICK-ROY. [SEAL.]"

The plaintiff then deduced her title from Craig and Bayard by a series of mesne conveyances not necessary here to be recited.

This was followed by the testimony of plaintiff's engineers, and map, showing that the land claimed in this writ lay wholly without the lines of the lots in Wood's plan and mostly within the beds of the rivers as shown on Wood's plan. The entire claim is made land, or natural and artificial accretions, the present extent of which is approximately shown by the dotted lines in the plan. Plaintiff further proved that this made land is now and for many years has been rented out by the city for private purposes ; and the Act of 1804, a supplement to the borough charter (4 Smith Laws 144), showing that the old borough was bounded by these rivers ; and rested.

The defendant moved for a compulsory non-suit because the plaintiff did not show any right of possession in herself to the land described in the writ. The Judge granted the non-suit and afterwards the court in banc refused to take it off. Whereupon the plaintiff took this writ of error, assigning for error the action of the court below in refusing to take off the non-suit.

*Slagle* and *George Shiras, Jr.* (with whom were *Wiley, John Barton, Thomas Patterson* and *T. H. Baird Patterson*), for plaintiff in error.—In the deed made in fulfillment of the articles of agreement the river is called for as a boundary, and being a natural boundary, controls the call for any artificial lines, if any were mentioned : Wharton v. Garvin, 10 Casey 340 ; Wood v. Appal, 13 P. F. Smith 210 ; Koch v. Dunkel, 9 Norris 264. It was a question for the jury whether or not Craig and Bayard did not take in fee to the water's edge not subject to any street easement, and whether the call for the Allegheny river was not intended to override a line drawn on a map following its meanderings. The question of boundary is always a matter of fact for a jury to determine : McLEAN, J., in Barclay v. Howell, 6 Peters 510 ; Brown v. Willey, 6 Wright 205. But it is contended that the Wood's plan being accepted by Craig and Bayard showed a dedication of the open space on the Allegheny river for public use. In the first place, an offer to dedicate is not complete until accepted by the city : Washburn on Easement 195 ; State v. Carver, 5 Strob., (S. C. Law) 217 ; State v. Wilson, 42 Me. 24 ; Curtiss v. Hoyt, 19 Conn. 154. In the second place, the dedication was only of an easement at most, the fee remaining in Craig and Bayard

This is the view taken by DUNCAN, J., in Commonwealth *v.* Mc-Donald, 16 S. & R. 401; Paul *v.* Carver, 2 Casey 223 ; Koch *v.* Dunkel, 9 Norris 264.   That the fee simple is in lot owners in case of a dedication of any open space for street or other purposes, and the public only have easement, is abundantly shown in St. Mary, Newington *v.* Jacobs, L. R. 7 Q. B. 53 ; Boston *v.* Richardson, 13 Allen 159 ; Jackson *v.* Hathaway, 15 Johnson (N. Y.) 447 ; City of Dubuque *v.* Maloney, 9 Iowa 450 (though as to effect of code on such cases in latter state see Des Moines *v.* Hall, 24 Iowa 234) ; Perley *v.* Chandler, 6 Mass. 454 ; Dill. Mun. Corp. § 633 ; Chambers *v.* Furry, 1 Yeates 167. The claim of the city to a title in fee shows a diversion of the property from the use implied in the alleged dedication : thus giving the plaintiff a right to recover in ejectment : Cooper *v.* Smith, 9 S. & R. 31 ; Tillmes *v.* Marsh, 17 P. F. Smith 512 ; Pomeroy *v.* Mills, 3 Vt. 410 ; Barney *v.* Keokuk, 94 U. S. 339. All the cases cited by defendant fail to show a single case of dedication, where the municipality held a fee simple title, and the distinction is clearly shown in Commonwealth *v.* McDonald, 16 S. & R. 390 ; Barclay *v.* Howell, 6 Peters 507, 508.

*D. T. Watson* and *W. C. Moreland* (with whom was *Joel L. Bigham*), for defendant in error.—The point here raised was elaborately discussed and determined in•McDonald *v.* Commonwealth, 16 S. & R. 397, which was recognized as authority in Birmingham *v.* Anderson, 12 Wright 260.

It is immaterial to the determination of this case whether the river front on the Monongahela and Allegheny was, or was not, dedicated to public use.   Even if it was not so dedicated, it was never granted to Craig and Bayard, therefore, Mrs. Schenley has no title to any portion of it.  She is not, therefore, a riparian proprietor on either of these rivers, and she cannot claim any land made by alluvion.   That properly passed and belongs to whoever is the riparian proprietor—which undoubtedly in this case is the city of Pittsburgh : New Orleans *v.* United States, 10 Peters 718 ; Barclay *v.* Howell's Lessee, 9 Peters 498. Wood's plan, referred to in the deed, becomes an essential and material part of it, the fact that the river is called for as a boundary is immaterial.

It is a good and valid dedication to public use to leave open spaces designated in the plot or plan of the town.   And the Woods plan did in this way dedicate to public use all the land lying between the lot lines and the Monongahela and Allegheny rivers : Commonwealth *v.* McDonald, 16 S. & R. 397 ; Birmingham *v.* Anderson, 12 Wright 258 ; Commonwealth *v.* Rush, 2 Harris 189 ; Cincinnati *v.* White, 6 Peters (S. C.) 438 ; New Orleans *v.* U. S., 10 Peters (S. C.) 713.   It is immaterial

that there is no writing on the plan as to the specific purpose for which the open space is left. Indeed, the location along the rivers is the strongest proof there could be that it is for the general use of all the citizens : Rowan v. Portland, 8 B. Mon. 232, 246 ; Buckner v. Augusta, 1 A. K. Marshall 8 ; Cincinnati v. White, 6 Peters 431 ; Livingston v. New York, 8 Wend. 97.

Mr. Justice STERRETT delivered the opinion of the court, January 7th 1884.

In January 1784, John Penn, Jr., and John Penn, late pro-.prietaries of Pennsylvania, made an agreement with Isaac Craig and Stephen Bayard for the sale, inter alia, of a piece of land in the "manor of Pittsburgh, lying and being in a point formed by the junction of the two rivers Monongahela and Allegheny ; bounded on two sides by the rivers aforesaid, on a third side by the top or ditch of Fort Pitt continued from the Monongahela to the salient angle of the northeast bastion, and thence, on the other side of a ditch, out to the Allegheny, containing three acres more or less."

The subject of this contention is the title to a portion of the above described river front, extended and enlarged by the accretions thereto of nearly a hundred years. Starting with the admission of title in the Penns, the plaintiff gave in evidence the contract of sale above referred to, the deed of December 31st 1784, from the Penns to Craig and Bayard, together with Col. Wood's plan of Pittsburgh, several deeds of conveyance and other evidence, tending to show that the title acquired by Craig and Bayard was transferred and finally vested in the plaintiff.

The contract of sale was clearly executory. It expressly provided for a formal deed of conveyance within a year, and also that the consideration thereof should be determined by a bona fide sale of a like quantity of adjoining land. The deed called for by the agreement was executed and delivered within the year, but the land thereby conveyed was not the same, in all respects, as that described in the agreement. According to the description contained in the deed itself, it conveyed thirty-two lots or pieces of ground situated at a point formed by the two rivers Monongahela and Allegheny in the town of Pittsburgh, marked in Col. Wood's plan of said town Nos. 1 to 17 inclusive, Nos. 132 to 145 inclusive, and No. 260 ; "said plan being recorded or intending to be recorded in the office for recording deeds in Westmoreland county : The said lots Nos. 1 to 17 inclusive are bounded northwardly by said Allegheny river, eastwardly by Marbury street, southwardly by Penn street and southwestwardly by said Monongahela river ; the said lots Nos. 132 to 144 inclusive, are bounded southwestwardly

by said Monongahela river, northwardly by Penn street, east-wardly by Marbury street and southwardly by Liberty street." The reason of this difference in description doubtless was that between the making of the contract and the execution of the deed, nearly a year thereafter, the town of Pittsburgh was located, and the general plan thereof, embracing Fort Pitt and the entire point between the two rivers, had been prepared by Col. Wood for the Penns. Hence it was that the land intended to be conveyed is described as town lots, designated by their numbers as given on the map or plan of the town. But what-ever may have been the reason for departing, either in form or substance, from the original agreement, the presumption is that it was done by consent of the parties interested and for their mutual benefit. In the absence of evidence to the contrary, it must be assumed that the deed was accepted as a full and com-plete execution of the contract so far as it remained in force at the date of the conveyance. In other words, the executory contract, with such modifications as may have been suggested by the change of circumstances and assented to by the parties, was superseded and merged in the subsequent conveyance. The extent of Craig and Bayard's title must therefore be determined by the deed of December 31st 1784, in connection with the plan which is therein referred to and virtually made part of the conveyance. The plan, thus incorporated with the deed for the manifest purpose of identifying and describing the property intended to be conveyed, clearly and unmistakably shows that on the side next to each river, the lots are bounded by an inside street line, leaving an open space of varying width between the lot line and the water line on each river. On the Monongahela front, the open space is Water street, and so marked on the plan. On the Allegheny front, is the public highway since known as Duquesne way, occupying the open space between the lot lines and the water line. It is conceded that the land claimed in this suit is wholly outside the lines of the lots as shown on the plan ; and unless the deed, under which plaintiff claims, conveyed more than is included within those lines, she has shown no title. The deed of December 31st 1784, properly construed, was not intended to convey, nor did it convey, any part of the point except that included within the lot lines as designated on the plan. The precise and accurate description and location of the lots, furnished by the plan given in evidence by plaintiff herself, cannot be controlled by the general language of the deed calling for the rivers as boundaries of the respective blocks of lots. The plan, which was incor-porated with the deed for the very purpose of definitely fixing the location of the lots, clearly shows that they did not extend to the water line on either river, nor include any of the land in

controversy. The parties to the deed never intended that they should; nor is there any evidence that would justify a jury in finding that they did. Those who were concerned in laying out the town, that was destined soon to become a great city, never dreamed that the lots, accurately described on the plan, embraced any portion of the narrow, open space, on each river, evidently intended as a means of public access to and along the rivers. That was left for some one else to discover long afterwards. The question appears to have been first raised in Commonwealth *v.* McDonald, 16 S. & R. 390, where, after an elaborate discussion of the subject by Mr. Justice DUNCAN, it was held that the executory contract was merged in the deed and " nothing more was conveyed than the lots delineated in the map and designated by the numbers." In arriving at that conclusion it is said, " the grant is limited to the ground contained in the numbers designated in Wood's plan. The original agreement was extinct, a new one made. It can have no effect in the construction of the conveyance, and that was by the plan just before made. The parties could not have had in view to derange, dislocate, or break in on the plan. They profess to contract in conformity to it, and in conformity to the numbers; they adopt that plan and regulate their conveyance by it. It is impossible to reconcile the boundary of the river with the grant by the map. The moment you refer to the plan or plat of the town, which is a certain and complete description of itself, requiring nothing extraneous to designate it, the boundary by the river is lost, the map excludes it; that circumstance is a mistake, and this, on every rule of construction, is to be disregarded as surplusage. The numbers convey all within certain limits; nothing beyond those limits is granted."

We have no doubt the conclusion reached in that case was correct and should have been accepted as the final settlement of a question which is now resurrected after the lapse of more than half a century. It is true the parties to this contention, being different, are not bound by that decision, but the question is substantially the same, and it ought to require a very clear case to justify us in reaching a different conclusion. Instead of being departed from, however, the controlling principle of that case has been recognized and followed in subsequent cases. In the Borough of Birmingham *v.* Anderson, 12 Wright 253, it was held that where the proprietor of a town plan fronting on a navigable river, in his deed conveying some of the lots, refers to the plan as descriptive of the lots conveyed and their location, the plan thereby becomes an essential part of the conveyance and has the same force and effect as if copied into the deed; and, in construing such a deed wherein the lots are in terms bounded by "the river," the location of the lots is so

[West *v.* Cochran.]

far controlled by the plan as to fix the lot or beach line and not the river as their real and proper boundary.

Without pursuing the subject further, we think the Court of Common Pleas was clearly right in sustaining the judgment of non-suit.

Judgment affirmed.