# Frank R. Shattuck *v.* Florence Cunningham and Georgiana Cunningham, Appellants.

*Equity—Specific performance—Description—Repugnancy.*

Defendants contracted to convey to plaintiff " all that certain lot or piece of ground known as Nos. 928, 930 and 932 North Eighth Street (53 feet 4 inches front and 53 feet 7 inches deep) in said city of Philadelphia, free and clear and discharged of all liens and incumbrances of any nature or kind whatsoever." The lot was not rectangular in shape, but a portion of it extended beyond the lines formed by the rectangle 53 feet 4 inches front and 53 feet 7 inches deep. The evidence showed that the entire lot was used for one purpose without any fence separating the extension from the rest of the lot, and that the deed, by which defendants obtained title, conveyed the entire lot by metes and bounds, as one tract, and described it as " being premises No. 928 North Eighth Street." *Held*, that plaintiff was entitled to a conveyance of the entire lot.

Argued Jan. 31, 1895. Appeal, No. 51, Jan. T., 1895, by defendants, from decree of C. P. No. 2, Phila. Co., March T., 1894, No. 1289, on bill in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity for specific performance.

The case was referred to Rudolph M. Schick, Esq., as referee, who reported as follows :

" The bill of complaint alleges that, on March 2, 1894, the defendants were the owners in fee of the premises known as Nos. 928, 930 and 932 North Eighth street, and still own the same ; that they obtained the same by deed dated August 8, 1893, which deed described each of the three lots separately. The lot No. 928 was described as follows :

" ' All that certain lot or piece of ground beginning at a point on the west side of Eighth street at the distance of three hundred and twenty-three feet five and seven-eighths inches northward from the north side of Poplar street in the Twentieth ward of the city of Philadelphia, thence extending northward along the west side of Eighth street seventeen feet four inches to a point ; thence westward on a line at right angles to the said Eighth street, fifty-three feet seven inches to a point ; thence southward on a line parallel to the said Eighth street, seventy-two feet to a point ;

thence eastward on a line at right angles to the said Eighth
street, thirty-one feet ten and seven-eighth inches to a point;
thence north fourteen degrees, fifty-eight minutes, fifty-one sec-
onds, east fifty-four feet nine and five-sixteenth inches to a point,
and thence eastward on a line at right angles to the said Eighth
street, eighteen feet two and one half inches to the said Eighth
street and the place of beginning, being premises No. 928 North
Eighth street.

" The lot No. 930 adjoins No. 928 on the north and is a rec-
tangular lot having a front of eighteen feet and extending west-
ward, of that width, fifty-three feet seven inches, and lot No. 932
adjoins this on the north, and is of the same shape and dimen-
sions; that the price paid by defendants for the three lots
respectively were:

" For 928 North Eighth street, . . . . . . . $1,850 00
  For 930 North Eighth street, . . . . . . 1,500 00
  For 932 North Eighth street, . . . . . . 1,525 00
                                            ─────────
          Total, . . . . . . . . . . . . . $4,875 00

This was clear of incumbrances. That the said premises are
now subject to a mortgage of $6,000 to the City of Penn
Building Association, which mortgage, however, also binds the
premises known as No. 935 Darien street, purchased at the same
sale with the other lots for $1,315, clear of incumbrances; that
on March 2, 1894, the defendants entered into an agreement
with plaintiff to sell to him the said lots on North Eighth
street, and the agreement is recorded, and a copy is annexed
to the bill. It is as follows:

" ' This agreement, made the second day of March, A. D. one
thousand eight hundred and ninety-four (1894), between Flor-
ence Cunningham and Georgiana Cunningham, single women,
of the city of Philadelphia, of the first part, and Frank B. Shat-
tuck, attorney, of the same place, of the second part: Witness-
eth, that the said parties of the first part, for the consideration
hereinafter mentioned, do hereby for themselves, their heirs,
executors and administrators, covenant, promise and agree with
the said party of the second part, his heirs and assigns, that they,
the said parties of the first part, shall and will, at the time here-
inafter mentioned, at the proper costs and charges of the said

Frank R. Shattuck, attorney, his heirs and assigns, by a good and sufficient deed of conveyance, grant, convey and assure, unto the said party of the second part, his heirs and assigns, all that certain lot or piece of ground, known as Nos. 928, 930 and 932 North Eighth street (53' 4" front and 53' 7" deep), in said city of Philadelphia, free, clear and discharged of all liens and incumbrances of any nature or kind whatsoever. Together with all and singular the buildings and other improvements and appurtenances thereunto belonging. And the said party of the second part, for himself, his heirs, executors and administrators, does hereby covenant, promise and agree with the said parties of the first part, their heirs and assigns, that he, the said party of the second part, shall and will well and truly pay unto the said parties of the first part, their heirs and assigns, the sum of six thousand dollars, in manner following: Five hundred dollars upon the execution of this agreement. Fifty-five hundred dollars at any time within sixty days from March 1, 1894; provided that if the said party of the second part shall neglect to pay said sum of fifty-five hundred dollars within said time, then the said first payment of five hundred dollars shall be retained by said parties of the first part, as and for liquidated damages. At the time of the delivery of any such deed of conveyance, it is agreed that immediate possession of said premises shall be given to said party of the second part, his executors, administrators or assigns.

" ' In witness whereof, the said parties to these presents have hereunto set their hands and seals this second day of March, one thousand eight hundred and ninety-four.

FLORENCE CUNNINGHAM.      [SEAL.]

GEORGIANNA CUNNINGHAM.      [SEAL.]

F. R. SHATTUCK.      [SEAL.] '

" The bill further alleges that on April 23, 1894, the plaintiff presented a good and sufficient deed for the premises to the defendants for execution and notified them of his election to become the purchaser of the same, and his desire to pay the balance of the purchase money, and that the defendants refused to execute the deed, but on April 30, 1894, presented and offered to deliver to him an executed deed which did not accurately describe the said premises, but omitted from the description a considerable portion of the same, which deed plaintiff

refused to accept for that reason and because the premises were subject to the aforesaid mortgage, and that thereupon the defendants refused to execute any deed containing any description differing from that in the deed they had tendered, and did waive any tender of the purchase money; that plaintiff is ready to pay the balance of the purchase money and perform his part of the agreement whenever the defendants shall execute a deed for the premises described free and clear of incumbrances.

" The bill then prays relief that the defendants may be decreed to execute and deliver a deed for the premises known as Nos. 928, 930 and 932 North Eighth street, free of incumbrances; that the defendants be restrained from conveying or incumbering the said premises, and general relief.

" The answer admits the ownership of the premises, that they were obtained by deed as alleged, that they paid the price alleged, that the premises are subject to mortgage as alleged. It admits that they entered into the agreement set out in the bill, does not admit that the premises first described are known as No. 928 North Eighth street, and avers that the price paid for the premises is immaterial. The answer denies that the plaintiff on April 23, 1894, presented to them a deed for execution in accordance with the agreement, and avers that on April 30, 1894, they tendered a deed accurately describing the premises, offering to convey the same to him clear of incumbrance upon payment of the balance of purchase money, but that plaintiff refused to accept the same and refused to pay the balance of the purchase money. It also denies that defendants waived tender of balance of purchase money by plaintiff. The answer denies that plaintiff is and has been ready to pay the balance of purchase money and perform his part of the agreement, and avers that he has evaded a consummation of it, and is not entitled to specific performance.

" The dispute which gave rise to the case is this: The southernmost of the three lots in question (No. 928) is shaped something like the letter L, having a projection from the rear end thereof towards the south, fifty-four feet eight inches on the west line, and having a width of thirty-one feet ten and seven-eighth inches on the south line, and widening as it approaches the main body of the lot to thirty-five feet, four and one half inches, having an area of 1750 square feet, and the plaintiff

contends that under the agreement he is entitled to a convey-
ance of the three lots including this projecting portion of the
southern lot, while the defendants claim that he is entitled to
a conveyance of the three lots, having a front of fifty-three feet
four inches and extending westward of that width fifty-three
feet seven inches, or in other words that the agreement does
not include the ground projecting from lot No. 928.

" From the allegations of the bill, the admissions of the answer
and the testimony adduced the referee reports the following
to be the facts of the case :

## " FINDINGS OF FACT.

" The three lots of ground on Eighth street in question,
together with a fourth lot fronting on the street in the rear,
named Darien street, the rear end of which adjoins the pro-
jecting lot of ground in dispute, were conveyed to the defend-
ants in one deed, dated August 8, 1893, and recorded. Each
lot was described as a separate tract. The description of lot
No. 928 is set out in the second paragraph of the bill and
includes this disputed tract, within the metes and bounds given,
and concludes with the words 'being premises No. 928 North
Eighth street.'

" The three lots constitute one open place used as a marble
yard. There is no division fence between the northern portion
of No. 928 and the projecting portion in dispute. This use of
the entire lot for the one purpose is apparent to any one going
upon it, and the plaintiff, before the negotiations began, had
visited the lot, had seen that it extended in the rear of the
premises Nos. 924 and 926 North Eighth street, making these
two lots very shallow and had observed that the entire tract
was used as one.

" In the negotiations that ended in the agreement attached
to the bill, William E. Cunningham, the brother of the defend-
ants, represented them as their agent. The negotiations were
begun by one Atkinson, who held an option for the purchase of
the premises in the following words :

" 'PHILADELPHIA, PA., 2, 10, 1894.

" ' If the lots 928, 930 and 932 North Eighth street (8th) are
not sold by March, 1894, (1st) first, I agree to give M. Atkin-
son, his heirs or assigns, an option on said lots for the period of

(60) sixty, (March April,) days from March 1st, 1894, provided said M. Atkinson shall give me five hundred dollars ($500.00) on March 1st, 1894, to be held as a forfeit, provided he does not purchase the lots in time specified, option to be for $6,000.00 (six thousand dollars), free of all encumbrances.

(Signed)            Wm. E. Cunningham,<br>
Jane Y. Cunningham.

" ' Witness:  M. Atkinson.'

" Atkinson offered to transfer his option to the plaintiff and he agreed to pay, and did subsequently pay, $750 for it.   In the meantime plaintiff made an examination of the record to ascertain the description of the property and to learn who was the owner, and found that the title was in defendants.   He then prepared an agreement, which he gave to Atkinson to have defendants sign.   This agreement is like the one which is Exhibit A to the bill, except that it did not contain the words and figures in brackets in the eighteenth line thereof, as printed, viz: ' (53' 4" front and 53' 7" deep),' and it did contain the words ' and a good and sufficient deed for said premises shall have been executed and tendered for delivery by said parties of the first part,' which words are not in Exhibit A.   A day or two after the plaintiff had given this agreement to Atkinson, Mr. Charles H. Downing, a member of the bar, with William E. Cunningham, came into the plaintiff's office, having this agreement with them.   Mr. Downing objected to the words relating to the tender of a deed by defendants, last quoted, and plaintiff assented that they should be stricken out, and it was done.   Mr. Downing also insisted that the size of the lots be inserted and with a pencil he wrote the words ' 53' 4" front and 53' 7" deep,' in one of the blank spaces of the paper, and indicated to Mr. Everitt, the plaintiff's clerk, where words should be inserted in the new written agreement, which the plaintiff had instructed him to prepare.

" A large portion of the evidence adduced related to what took place at this interview, but nothing was proved that affected the integrity of the paper as it was signed.   The demand of Mr. Downing that the size of the lots should be inserted was made in a tone loud enough to be heard by several persons present and might have been heard by plaintiff.   When he sub-sequently signed the agreement he had an opportunity, and it

was his duty, to read it. The referee finds no evidence of fraud on which the agreement could be reformed, and, indeed, though so much was made of it in the evidence, the bill does not pray for its reformation.

" It is to be observed, however, that no mention was made in this conversation by any one of the projecting portion of lot No. 928. Mr. Everitt wrote the new agreement, conforming to the suggestions made by Mr. Downing, and took it to his office. It was there executed and acknowledged by the defendants, and on the next day Mr. Downing and one of the defendants brought it to the plaintiff's office. He only looked at the paper to see that it was executed and acknowledged, and without reading it executed it and paid Mr. Downing the money and took his receipt for it. The paper then executed is Exhibit A to the bill and was retained by the plaintiff who procured it to be recorded. During all of this transaction Mr. Downing considered himself as representing the defendants, and the plaintiff certainly had a right to assume that he did. He also represented a building association, which held a mortgage of $6,000 on these lots, together with the lot on Darien street, which mortgage is still unsatisfied.

" Shortly after the execution of this agreement the plaintiff learned that William E. Cunningham had offered this projecting piece of land for sale and a correspondence ensued between them which the referee does not deem material to the case, except that it manifested to the plaintiff that the defendants would not convey the lot to him, including this projecting portion.

" About April 25, 1894, the plaintiff having prepared a deed conveying the three lots to him, in which the lot No. 928 was described as including this projecting portion, took it to Mr. Downing as attorney for the defendants, tendered it to him and requested him to have it executed. In this interview it was agreed that everything of a technical nature connected with the proceedings to be instituted to enforce the agreement should be waived. Mr. Downing to carry out this agreement wrote upon the deed the following :

"' PHILA., April 25, 1894.

"' By reason of the description of the property named in the within deed being different from that agreed to be sold accord-

ing to the terms of agreement, dated March    1894, we do
hereby refuse to execute said deed.   The tender of the pur-
chase money (that is the balance thereof) is hereby waived.'

" He subsequently gave the deed thus indorsed to William
E. Cunningham, with instructions to have his sisters sign it, so
as to raise the question fairly, their refusal to execute the deed,
and their reason for it.   It was certainly the understanding
between the plaintiff and Mr. Downing to submit to the Court
the simple question whether the plaintiff's contention or the
defendants' should be maintained, uncomplicated by any ques-
tion as to proper tender of performance by either side.

" The defendants did not sign the memorandum made by
Mr. Downing nor consult him further about it, but employed
other counsel, who, in ignorance of the agreement made by Mr.
Downing, prepared a deed describing the lot No. 928 as a rec-
tangular lot, in conformity with the defendants' construction of
the agreement, and after four o'clock on April 30, 1894, the
day on which the plaintiff's option expired, while the plaintiff
was attending an auditor's meeting, held in the office of another
lawyer, the defendants, with their counsel, made a tender to
him of this deed, duly executed.   The plaintiff stated that at
that late hour he did not have the purchase money to pay, but
refused further to consummate the transaction because of the
mortgage upon the property and because the description did
not conform to the agreement.   The defendants offered to
have the incumbrance removed at the time of the settlement,
if he would accept the deed as they had tendered it, and offered
to meet him the next day or any reasonable time to make
settlement.   The plaintiff declined and stated to them that
he was ready to make settlement at any time that they
tendered a deed with proper description.   In this interview
plaintiff informed defendants of this arrangement with Mr.
Downing.

## " CONCLUSION AS TO LAW OF CASE.

" This suit is brought to procure the specific performance of
a written contract.   As there are no facts in the case which
justify a change of any of the terms of the contract, the rights
and duties of the parties thereto are to be determined by the
ordinary rules for the construction of such contracts.   The

first of these is to ascertain the intention which the parties have expressed in the agreement. The defendants have contracted to convey to the plaintiff 'all that certain lot or piece of ground known as Nos. 928, 930 and 932 North Eighth street, (53′ 4″ front and 53′ 7″ deep) in said city of Philadelphia, free and clear and discharged of all liens and incumbrances of any nature or kind whatsoever.' The referee is of the opinion that the contention of the plaintiff should prevail, and that a proper construction of the agreement makes it the duty of the defendants to convey the entire lot as claimed by plaintiff. The subject of the contract was 'all that certain lot . . known as Nos. 928, 930 and 932 North Eighth street,' and the proof is that the entire lot as claimed by the plaintiff was occupied as one lot and used for one purpose without any fence separating the piece of ground in dispute from the rest of the lot, and that the deed by which the defendants obtained title conveyed the entire lot by metes and bounds, as one tract, and described it as 'being premises No. 928 North Eighth street.' In view of these facts and the wording of the whole contract do the words, 53′ 4″ front and 53′ 7″ deep, manifest an intent to convey a rectangular lot of these dimensions rather than the whole lot as occupied by the defendants and described in the deed to them.

" There are numerous reported cases in which repugnant descriptions found in the contract or conveyance have been construed by the courts. In all the cases in which the thing granted has been described by its number as found on the ground, or a plat, or by a name by which it is known or designated, or where it is described as a tract occupied by a particular person, such description has been held sufficient in a conveyance, contract or writ of ejectment to be a sufficient description to effectuate the purpose of the parties, and even when the instrument construed contained a repugnant description by metes and bounds, the latter has been made to yield to the former.

" Thus in Rutherford v. Tracy, 48 Mo. 325, the granting clause in the deed was 'Lot 3 in block 87, beginning at the northeast corner, thence west to the alley, thence south eighteen feet,' etc., the latter description embracing a less area than lot 3. The court held : 'The legal inference or presump-

tion is that the grantor conveyed the whole lot and attempted to give it a more particular description by bounding it with courses and distances. The designation of the lot by its number must be regarded as the prominent object or monument, and where there is uncertainty the monument must prevail over the description by courses and distances.' The same principle is applied in Union R. R. Co. v. Skinner, 9 Mo. Ap. 189.

" In Lodge v. Lee, 6 Cranch, 237, a grant of an island in the Potomac river, by name, superadding a description by courses and distances of the lines thereof, which, a survey showed, did not include the whole island, was held nevertheless to pass title to the whole island.

" The legislature of Pennsylvania by act of 24th March, 1785, provided for the survey of certain lands, and directed that each section should be marked with a number on a tree at the northwest corner, and return made to the land office. In Smith v. Moore, 5 Rawle, 348, GIBSON, C. J., held : ' If then at the time of making the survey on the ground, the lot received a name of baptism sufficient to distinguish it from all the rest, its individuality could not be destroyed or its name changed by a blunder in the return in respect of the boundaries. Where there is a discrepancy between the numbered corner and the boundaries returned, it appears more reasonable that the number should be taken to determine the boundaries than the boundaries should be taken to determine the number.' See also Dunn v. Ralyea, 6 W. & S. 475.

" In Koch v. Dunkel, 90 Pa. St. 264, it was decided that where land is described in a deed of conveyance by courses and distances and also by calls for adjoiners, the latter, where there is a discrepancy and there are no monuments on the land, must govern.

" It is said in 1 Dart on Vendors, 602, that ' where the deed contains an adequate and sufficient definition, with convenient certainty, of what is intended to pass, any subsequent erroneous addition will not vitiate it, according to the maxim *falsa demonstratio non nocet.* For instance, under a conveyance by A of all his meadow Blackacre, described as containing 10 acres, but which in truth contains 20 acres, the whole 20 acres will pass.'

" In Ross v. Baker, 72 Pa. St. 186, there was a parol sale of land and the receipts for the purchase money described the premises as 'Fleming Farm on French Creek,' and the description was held to be sufficiently certain to.pass the title.

" In Rodgers v. Olshoffsky, 110 Pa. 147, the lot was described as 'All that certain lot . . . . in the city of Bradford, bounded and described as follows, to wit: Commencing at a stake in north line of Main street . . . . thence westwardly along the north line of Main street twenty feet,' etc. This line was only eighteen and one third feet long, and it was held that the grantee could not recover from the grantor for the deficiency. The manner in which the point was raised did not call for special reference to the principle here contended for, yet it evidently influences the court's opinion.

" In Tallman v. Franklin, 14 N. Y. 584, the auctioneer's book described the lots: 'Building lots on One Hundred Thirty-second and One Hundred Thirty-third streets, between Fifth and Sixth avenues, numbered 132 to 135, and 154–157.' In point of fact the first four lots were on One Hundred Thirty-second street and the other four on One Hundred Thirty-third street. This was shown by proof. The lots were sold as Harlem lots which had been previously sold. Held that the description was sufficient compliance with the statute of frauds. This was an action to recover difference in price on subsequent sale.

" In Barry v. Coombe, 1 Peters, 640, 652, the description of the property was: 'Your one-half E. B. wharf and premises.' JOHNSON, J., said: . . . 'For anything that appears on the face of the instrument, E. B. wharf may be as definite a description of locality as F. street, and then the ambiguity could only arise, if it be shown that the bargainor had more than one house in F. street, like the two manors of Dale, put by several authors.' This was a bill for specific performance.

" In Lewis v. Reichey, 27 N. J. Eq. 240, which was a bill for specific performance, the description was: 'Property held by H. Reichey on Bruce street, Thirteenth avenue and South Orange avenue, in Newark, N. J., which said title is held by Reichey by declaration of sale from Mayor and Common Council of Newark.' Held to be sufficient under statute of fraud, and performance decreed.

" In Cate v. Thayer, 3 Greenl. 71, the line of the town of Dresden being described in the act of incorporation as running a north north-east course, including the whole of a certain farm; it was resolved that the line of the farm should prevail, as being the more certain monument and more evidently intended by the legislature.

" In Keith v. Reynolds, Ibid. 393, it was held that where a parcel of land is conveyed as being the whole of a certain farm which is afterwards described in the deed by courses and distances, which do not include the whole farm, so much of this description will be rejected as that the whole may pass.

" A large number of cases of the same import are collected in the decision of the court in Sherwood v. Whiting, 54 Conn. 330.

" The use of the street numbers in Philadelphia in leases is well known, and in Flanigen v. City of Philadelphia, 51 Pa. St. 492, an amicable action and confession of judgment in ejectment, the description was : ' The premises situated No. 136 South Third street, in the city of Philadelphia,' and it was sustained as a sufficient description.   In that case Judge AGNEW said : ' The description of the cause of action is meager, but not wholly indefinite.  . . . . In a city having a known system of notation, regulated by municipal laws, recognized in the transactions of general business and acted upon by every one, the description of a parcel of ground, or the messuage thereon, by a number is sufficiently definite.   The state adopted a system of notation by numerals for the donation and depreciation lands covering nearly the whole of the northwestern part of the state. . . . . The conclusive effect of it will be found set forth in Smith v. Moore, 5 Rawle, 348, and Dunn v. Ralyea, 6 W. & S. 478.   Thousands of tax titles in this territory, and in towns and cities in other parts of the state, rest upon no other foundation than the number affixed to the ground, which, as any other descriptive fact, is a subject of proof.'   The principle announced in the closing sentence of this quotation shows that in ascertaining the subject-matter of the contract it is proper to take proof as to the occupancy and use of the land to which it relates, and from the same principle it would seem certain that whatever irregularity in the lines of the lot No. 136 South Third street, the proof would have disclosed all the ground

shown to be occupied and used as a part of those premises must have passed by the lease and must have been recovered by the ejectment.

"It is true that in some of the cases cited the lot which was described by number was so numbered on a recorded plan or plat, but this cannot prevent their being authority in the decision of this case, for in such case the plat is not referred to or made part of the instrument construed. The production of the plat is the method of proof, possible in that case, to show what was meant by 'lot 3,' or by the like description. The same result was reached by that method as was reached in the case of the land described by its occupancy, by showing just what land was occupied. The court was thus made acquainted with the subject-matter about which the parties were contracting, and enabled to fit the contract to the subject-matter. The court in Flanigen v. The City, ut supra, had said the same may be done with reference to a lot in this city, and it seems to follow as an irresistible conclusion that if the contract in this case had only described the lot as No. 928 North Eighth street, without adding the front and depth, the whole lot, as it was occupied, would have been included in the description.

"The contention of the defendants, however, rests upon the use of these words describing the front and depth of the lots. It is to be observed, however, that they are not strictly repugnant to prior descriptions of the lot by its number. The lot is fifty-three feet four inches front and fifty-three feet seven inches deep. Its front and depth could not be otherwise truthfully described. These words and figures do not purport to describe the full dimensions of the lot to be conveyed, and therefore the referee is of opinion that they cannot be held to limit the clear meaning of the words 'all that certain lot . . . known as No. 928,' etc. If the contract had called for a lot situate three hundred and twenty-five feet north of Poplar street, having a front of fifty-three feet seven inches and a depth of fifty-three feet four inches, it would be clear that a rectangular lot of those dimensions was intended, but the use of the words 'lot . . . . known as No. 928,' etc., makes a very different case. The defendants' claim requires that these words (53' 4″ front 53' 7″ deep) should be construed as equivalent to the words: 'having a front on said Eighth street of 53' 4″ and extending west-

ward between parallel lines at right angles with said Eighth street to a depth of fifty-three feet seven inches.' If the contract did contain these words it would manifest a clear intention of the parties to pass only the rectangular lot.   Such a description would limit the former description of the full lot, but as the contract does not contain them it is not admissible to add them by construction.   Construed as the referee suggests, every word of the contract has its full operation.   The thing conveyed was the lots No. 928, 930, 932 North Eighth street.   The length of the front and depth lines are merely added by way of further description.   Even if this description was false it would not affect the true description by the lot number, under the authority of the maxim above quoted from Dart on Vendors, *Falsa demonstratio non nocet.*

" The intention to convey the entire lot is further shown by reference to the option, which William E. Cunningham, the agent of the defendants, gave to Atkinson, which was the paper on which the plaintiff first acted.   It reads: ' If the lots Nos. 928, 930 and 932 North Eighth street are not sold by March 1, 1894, I agree to give M. Atkinson, his heirs or assigns, an option on said lots,' etc.   This paper was the foundation of the plaintiff's rights and may be used to ascertain the intention of the parties: Koch v. Dunkel, 90 Pa. 264.

" The referee is also of the opinion that the plaintiff has not lost his right to the specific performance of the agreement by his failures to make a formal tender to defendants.   Long before the expiration of the plaintiff's option he had notice that the defendants would not perform their agreement.   In view of this it might be held that it was not necessary for him to make any tender: Dixon v. Oliver, 5 Watts, 509.   Hampton v. Specknagle, 9 S. & R. 212.   Pomeroy's Eq., section 1407, note: Lyman v. Gedney, 114 Ill. 390.   At the time he did take the deed to Mr. Downing it was agreed between them that all technicalities should be waived so that the question might be raised as to the construction of the agreement.   The agreement which Mr. Downing indorsed on the deed to be signed by defendants contemplated this and waived the tender of the purchase money.   The plaintiff evidently rested on this agreement and had no notice that the defendants refused to sign the agreement for at least five days afterwards and on the last

of the sixty days during which his option ran, and then at an hour when in the nature of things it was impossible to pay the purchase money, even if he had been willing to accept the deed they then tendered. In this interview he told the defendants that he was willing to take the property when he received a deed conveying the premises according to the agreement, and they refused to make such a deed.

" For the same reasons the referee is of opinion that the existence of the mortgage and its nonpayment before the tender of the deed should not affect the right of the defendants. The mortgage can be satisfied at the time of the settlement out of the purchase money.

" The referee is, therefore, of the opinion that a decree should be entered in favor of the plaintiff as prayed for in his bill, and that the defendants be ordered to pay the costs."

Exceptions to the referee's report were dismissed by the court.

*Errors assigned* were dismissal of exceptions to referee's report, quoting them.

*De Forrest Ballou,* for appellants.—In Pennsylvania and New York the tendency has been to give great latitude to the admission of parol evidence in the interpretation of such contracts: Clark v. Partridge, 2 Pa. 13; Martin v. Berens, 67 Pa. 459; Wolford v. Herrington, 74 Pa. 311; Lippincott v. Whitman, 83 Pa. 244; Gillespie v. Moon, 2 Johns. Ch. 585; Keisselbrack v. Livingston, 4 Johns. Ch. 144; London & Birmingham R. R. v. Winter, 1 Cr. & Ph. 57; Smith v. Wheatcroft, L. R. 9 Ch. D. 223; Joynes v. Statham, 3 Atk. 388; Walker v. Walker, 2 Atk. 98; Clowes v. Higginson, 1 V. & B. 524; Dear v. Verity, 17 W. R. 568; Southerland v. Parkins, 75 Ill. 338; Ewins v. Gordon, 49 N. H. 444; Meason v. Kaine, 63 Pa. 335.

The court will not decree specific performance where there is a mistake as to what forms the subject-matter of the contract: Lehmann v. McArthur, L. R. 3 Ch. Ap. 496; Mercantile & Exchange Bank Case, L. R. 12 Eq. 268; Harnett v. Yielding, 2 S. & L. 549; Neap v. Abbott, Cooper's Ch. 333; Butterworth v. Walker, 13 W. R. (M. R.) 168; Denny v. Hancock, L. R. 6 Ch. Ap. 1; Brewer v. Brown, L. R. 28 Ch. D. 309; Tillett v. Hospital, 26 Beav. 419; Darby v. Whitaker, 4

Drewry, 134; Williams v. Brisco, L. R. 22 Ch. D. 441; Underwood v. Hitchcox, 1 Ves. Sr. 279; Buxton v. Lister, 3 Atk. 383, 386; Ellard v. Lord Landaff, 1 Ball & B., 241; Martin v. Mitchell, 2 J. & W. 413; Stanley v. Robinson, 1 Russ & My. 527; Warde v. Dickinson, 10 W. R. (V. C. K.) 14; also 28 L. J. N. S. (Ch.) 315; Harnett v. Baker, L. R. 20 Eq. 50; In re Banister, Broad v. Munton, L. R. 12 Ch. D. 131; In re Marsh and Earl Granville, L. R. 24 Ch. D. 11; Heywood v. Mallalieu, L. R. 25 Ch. D. 357; Swaisland v. Dearsley, 29 Beav. 430; Minturn v. Baylis, 33 Cal. 129; Parrish v. Koons, 1 Pars. Eq. 97; Preston v. Stuart, 5 Rep. 100 (S. C. U. S.)

Upon the principle that the exercise of the jurisdiction to decree specific performance is discretionary, there can be no decree unless the plaintiff comes with perfect propriety of conduct: Harnett v. Yielding, 2 S. & L. 554; Cadman v. Horner, 18 Ves. 10; Robinson v. Wall, 10 Beav. 61; David v. Symonds, 1 Cox, 407; Reynell v. Sprye, 8 Hare, 222; 1 D. M. & G. 660.

*Alexander P. Colesberry,* for appellee, cited: Lee's Ap., 12 W. N. 183; Felty v. Calhoon, 139 Pa. 378; McCullough v. Manning, 132 Pa. 55; Cullmans v. Lindsay, 114 Pa. 166; Rutherford v. Tracy, 48 Mo. 325; Putnam v. Tyler, 117 Pa. 570; McGowan v. Bailey, 155 Pa. 256; McGowan v. Bailey, 146 Pa. 572; Corson v. Mulvaney, 13 Wr. 88; Smith's & Fleck's Ap., 69 Pa. 480.

PER CURIAM, Feb. 18, 1895:

The judgment in this case is affirmed upon the findings of fact and conclusions of law contained in the report of the learned referee in the court below.