## Davis *versus* Sabita.

1. A decedent's land was laid off in lots by a master, &c., in proceedings in partition, and a street laid out and marked on a plan. Davis sold lots adjoining according to a plot which he exhibited at the sale, and which indicated that streets on which his lots were located opened on the street of his neighbor; the report of the master was afterwards set aside, and a new plan made, leaving a strip of six inches wide between the streets on Davis's lots and the street on the neighbor's land, and depriving the lots from access to that street. *Held*, that the purchasers of his lots had a good defence against bonds given for the purchase-money.

2. The reservation of the six inches could not be disregarded under the maxim *de minimis lex not curat*. It is only when a matter is deemed utterly unimportant to carry out that this maxim applies.

3. One citizen cannot disregard the lawful exercise of rights by another.

4. An owner may dedicate his property to uses not unlawful, either public or private, and no change can be made except by lawful process or the assent of those for whom the dedication was made.

November 2d 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 124, to October and November Term 1868.

J. G. Davis, the plaintiff in error, being the owner of land in East Liberty, laid it out in lots designated on a lithographed plan, with the heading, "Orchard addition to East Liberty, part of the property known as Shakespeare Gardens. Auction sale of lots on Monday afternoon, August 28th 1865, on the premises." Handbills containing this lithographed plan were posted in the neighborhood. The plan exhibited three tiers of lots as bounded on the east by a street marked "East street," represented to be 50 feet wide, and on the south by "Union lane," 20 feet wide. The tiers of lots were separated by Liberty street and an alley 10 feet wide. East street and Union lane were not opened,

[Davis v. Sabita.]

nor were they marked on the ground. The lithographed plan was exhibited by the auctioneer as descriptive of the lots and their localities. The lots adjoined land belonging to Denniston's heirs, which prior to the sale of Davis's lots had been laid off in lots by a master and commissioners, who located a street, which they called Denniston street, along the east line of Davis's land; this was the street called "East street" on Davis's plan. Sabita at the sale purchased four of the lots for $510, paid one-third of the purchase-money on the 30th of August, gave two notes with warrants of attorney for the deferred payments, and received a deed for the lots, whose description in the deed corresponded with the plan made for the Denniston estate. After the sale the report of the master and commissioners dividing Denniston's estate was set aside and under direction of the court they made and filed another, laying out "Aurelia street," in place of that called "East street" on Davis's plan, but leaving a strip about six inches wide between that street and Davis's land, so that there was no outlet from the lots through Liberty street or the 10 feet alley. Judgment for $190 was entered on the 19th of September 1866 against Sabita on one of the notes. On the 8th of October 1866 the judgment was opened and the defendant let into a defence.

On the trial the foregoing facts were given in evidence. The plaintiff in rebuttal gave in evidence a deed of dedication by himself, in which he recited the laying out and sale of his lots; the change of the plan made for Denniston's heirs, by which Liberty street as marked in his plan had no outlet; that he had purchased three lots of the Denniston land for the purpose of affording an outlet, and then dedicated to public use as an highway so much of the land thus purchased as would be covered by the extension or prolongation of Liberty street till it would enter into Aurelia streeet, and granting to all persons who have purchased from him lots in his plan, &c., the right of passing from Liberty street to Aurelia street, &c., and the use of all the streets on the Denniston plan, so far as he had right to give and grant the same.

The plaintiff's points were:—

1. The reservation of six inches across the ends of streets, and of the use of streets, in the Denniston plan, is inoperative to prevent the use of these streets by the owner of lots in the adjoining plan, as to the six-inch reservation, on the maxim—"de minimis non curat lex."

2. If the first point be declined, then that such reservation would be inoperative after the execution and delivery of the deed in evidence from J. G. Davis.

4. If the jury believe that the plan referred to in defendant's deed is the plan recorded, then there is no ground for damages in this case.

[Davis *v.* Sabita.]

The court (Williams, J.) answered the points thus :—

" 1. The court declines to charge as requested in this point. The owner of private property adjoining lands of others has the right to lay it out in town lots, with streets and alleys, for the exclusive use of the purchasers of said lots—and in order to prevent the owners of the adjoining property from using the said streets, he has a right to retain the title to a strip of land between the line of the streets so laid out, and the line of the adjoining owners, and he would have the right to build up a stone wall or wooden fence on the strip so reserved, whether the same be half a foot or more wide—and the owners of the adjoining property would have no right to pass over the strip so reserved, in order to travel on the streets laid out for the exclusive use of such town lots.

" 2. The court declines to charge as requested in this point. The deed of J. G. Davis in evidence grants only a street over the three lots mentioned therein, and the same right to the streets in the Denniston plan as he himself has as the owner of said lots. It does not purport or undertake to convey a right of way over the reserved strip in the Denniston plan ; and if it did, the plaintiff has not shown any title to the strip so reserved.

" 4. If the jury believe that the plan referred to in the defendant's deed is the recorded plan given in evidence, and that this plan was brought to the notice of the defendant before or at the time he executed the deed, then there is no ground for damages in this case. But if the defendant bought the lots on the faith of the lithograph plan, and if he never saw, or had any notice of the recorded plan, until after the execution of the deed, then he is entitled to avail himself of the defence set up here, although the scrivener in drawing the deed may have had the recorded plan before him, and taken the length of the lines from the said plan."

The jury found for the defendant. The plaintiff took a writ of error, and assigned for error the answers to his points.

*H. Burgwin,* for plaintiff in error.

*Bruce & Negley,* for defendant in error, cited McCall *v.* Davis, 6 P. F. Smith 431.

The opinion of the court was delivered, January 30th 1870, by
THOMPSON, C. J.—The plaintiff in error, and plaintiff below, being the owner of certain real estate near or adjoining the village of East Liberty, Allegheny county, projected and laid out what he called the "Orchard addition to East Liberty." He procured a plan of the addition to be lithographed, showing the streets and alleys, and numbers of the lots therein, and by this he held a public sale of the lots on the 28th of August 1865, at which he

sold the lots in question, and delivered to the defendant two days thereafter, a deed for the lots purchased by him, on the payment of one-third of the purchase-money, taking two judgment-notes, each for a third of the purchase-money.    It is as to the judgment on one of these notes this controversy has arisen.

The lithograph plan of the town, represented a street called "East street," as if laid out by the plaintiff on his own property; but it turned out in proof that this street was a street *proposed* to be laid out by an adjoining owner on his own land, and which he never did lay out.    Besides this, an alley on the rear of the defendant's purchase which the lithograph represented as connecting with Aurelia street was a *cul de sac*, being cut off from that street by a narrow reservation, by the owner of the Denniston town plan.    These were material differences between the actual state of the property, and that in which the plaintiff represented it on his plan; and these differences, if they affected the value of the defendant's purchase, constituted good grounds for an equitable defence to the payment of the purchase-money in full, and that is what the defendant below claims.

In McCall v. Davis, 6 P. F. Smith 431, this court held in a case arising out of the same facts we have here, excepting as to parties, in an opinion by my Brother Agnew, " that where an owner of ground lays it off into town lots, with streets and alleys for their convenient use, and sells his lots accordingly, it is a dedication of these ways to the use of the purchasers.    The plan which he exhibits to the bidders is the evidence of their existence and location;" citing Birmingham v. Anderson, 12 Wright 253, wherein it was held that a plan or map thus referred to, becomes a material and essential part of the conveyance, and is to have the same force and effect, as if copied into the deed.    It was also held in McCall v. Davis, that the vendor was liable for damages to a vendee for the non-existence of East street, and for want of a connection of the alley purporting to run into Aurelia street, and this whether the representation was fraudulent, or merely by mistake; " that for his own positive acts which misled and injured, the vendor is liable."    One would suppose that all this would have satisfied the plaintiff below that he could not hold buyers of lots to contracts not made by them, or compel them to pay for ground differently situated from what he represented and induced them to believe was its situation.    But it seems not.

The three assignments of error on this record are, to the refusal of the court to affirm the three points propounded by the defendant's counsel, or either of them, viz. : " That the Denniston reservation across the ends of the streets in his plan, and the restriction of the use of the streets to the use of the lots in his plan, were inoperative;" " that it would be inoperative after the execution of the deed of the plaintiff of the 29th February 1869, dedi-

[Davis *v.* Sabita.]

cating to the purchasers the right of a street, or rather the extension of a street over lots purchased by him in the Denniston plan;" "and, lastly, in refusing to charge that if the jury believed that the plan referred to in the defendant's deed to plaintiff was the plan recorded, there would be no ground for damages."

The answers of the court to these points were entirely proper and adequate. Where one owns property by a title sufficient to give him entire dominion over it, he can grant it all, or reserve portions of it as he pleases. So may he dedicate it to uses not contrary to law, either public or private, and it is only by lawful process, or the assent of those for whose use the dedication was made, that any change can be made. It is not for one citizen to disregard the lawful exercise of rights by another. Nor can courts disregard reservations expressly and carefully made for a purpose not unlawful, on the principle *de minimis*. It is only when a matter is deemed utterly unimportant to carry out, that this principle operates. To the second point, the answer of the court was proper, and needs no discussion. The deed mentioned in it, did not supply the want of East street, which the plaintiff proposed in his plan, nor did it give a right of way over the reservation of the six-inch strip. As to the last point, the answer is unexceptionable, and had it accorded exactly with the plaintiff's prayer, it would have been manifestly erroneous. The plan recorded, was recorded after the deed was delivered to the defendant, and differed materially from the lithograph by which he bought. The recording of the plan, after the delivery of the deed to the defendant, did not go a step towards proving that the plaintiff had seen it at all, or was bound by it. It was, therefore, proper to instruct the jury that as it differed from the plan of the purchase, it would not bind the defendant, unless it had been shown to him, and had been assented to by him. This was the substance of the instruction. Seeing no error in any part of the record, the judgment is

                                        Affirmed.