WESTERN DISTRICT—PITTSBURG 1870.

67      9
151    420
67      9
164    533

67      9
29 SC    4

67      9
224    562
224    563

67      9
[39SC$^s$ 98
40SC $^5$198

### Robinson *et al. versus* Myers.

1. It is incumbent on a grantee to show that an alteration, beneficial to him, in a deed, was properly made.

2. If it appear that the alteration is written with the same pen and ink as the body, the inference would be that it was made before the sealing and delivery; if otherwise such inference would not arise and other evidence would be required to explain it.

3. The law does not *presume* that an interlineation in a deed is a forgery or made after execution; it is a question of fact for the jury, upon proof adduced by him who offers the deed.

4. R. made, laid out, and numbered town lots, and recorded the plot; amongst others were 269, 270, and 271. By deed referring to the plot, he conveyed 271 to M., as bounded on the east by an alley, and 269 to W., as bounded on the west by an alley; no alley appearing on the plot. On the application of J., who had become the owner of 269 and 271 and representing 270 as an alley, the Quarter Sessions vacated "said lot 270." *Held*, that J. was not entitled to 270.

5. The plot being referred to, was as much a part of the deed as if incorporated in it.

6. M. and J. fenced 270 and used it as a yard; if it had been an alley, this was an extinguishment.

7. If an alley, it was extinguished also by the proceedings in the Quarter Sessions.

8. When a verdict is taken subject to a reserved question, it should be rendered in favor of the plaintiff.

9. The facts upon which a reserved question arises should be found or agreed upon, and they and the question should be distinctly stated; the judgment to be pronounced should be specified as in a case stated.

10. Paul *v.* Carver, 2 Casey 223, Cox *v.* Freedley, 9 Id. 124, distinguished.

[Robinson *v.* Myers.]

November 4th and 5th 1870.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county :* Of October and November Term 1869.

This was an action of ejectment by William Robinson, Jr., against Joseph Myers for lot No. 270 in the plaintiff's extension of Allegheny City, called "Buena Vista." The writ was issued July 20th 1867.

The plaintiff having died after the commencement of the suit, John D. Robinson and others, his heirs and devisees were, on the 16th of April 1869, substituted as plaintiffs.

The lot in controversy was part of a large tract granted by the Commonwealth to James Robinson, which descended to the plaintiff in 1810 as heir at law of James Robinson.

In 1854 the plaintiff adopted a plan of lots, of which that in controversy is one, called "Buena Vista;" it was acknowledged July 19th, and recorded June 20th of the same year, in the recorder's office of Allegheny county in "plan book," &c.

"Buena Vista" contains altogether 289 lots.

The accompanying diagram exhibits so much of the plan as is necessary for an understanding of the case.

On the trial, April 16th 1869, before Sterrett, P. J., the plaintiff having given evidence of the foregoing facts, rested.

[Robinson *v.* Myers.]

The defendant offered in evidence the following deeds, viz. :—

1. William Robinson, Jr., to James Morgan, dated February 14th 1857, for "lots 271 and 272 on William Robinson, Jr.'s plan, &c. * * Commencing at the corner of lot No. 273; thence northwardly ninety feet, to an alley; thence eastwardly forty feet; thence southwardly *along an alley,* ninety feet to Taylor Avenue." * * The words " along an alley" were manifestly interlined, and no note of the interlineation was made in the attestation clause or elsewhere on the deed.

2. William Robinson, Jr., to William C. Maholm, dated November 22d 1858, for "lots No. 268 and 269 on William Robinson, Jr.'s plan, &c., * * commencing at the distance of 404 feet east of Pasture Lane (the east corner of the lot 270); thence northwardly along *a 20-feet* alley ninety feet to an alley; thence easterly 40 feet; thence southwardly 90 feet to Taylor Avenue; thence westwardly along said avenue 40 feet, to the place of beginning." In this deed it was originally written, "*northwardly along an alley ninety feet;*" this was changed by altering " *an*" into " *a* 20," and interlining "*feet*" before " *alley.*" This alteration was manifest on the face of the deed, and was nowhere noted on it. Both deeds stated that the lots were part of " Buena Vista," and referred to the record of the plan. The *alley* mentioned in the deed is lot 270, as laid down in the plan.

The plaintiffs objected to the offer on account of the alterations and interlineations in the deeds.

The court sustained the objection until the interlineations should be explained.

The defendant then called John Ramsey, who testified as to the Morgan deed:—

" I am a witness to this deed. It is written by me. I made the interlineation of the words "*along an alley.*" I made the interlineation at the request of James Morgan, after General Robinson had told me to leave alleys opposite the alleys in his plot. It was done after the deed was executed, and delivered to Morgan. I had no authority to make the interlineations, except by his directing me to leave alleys opposite the alleys in his plan. I was acting as agent for General Robinson in selling the lots. The alteration was made very shortly after the deed was delivered to Morgan. I know that Mr. Morgan brought the deed back to me after he got it, and wanted me to make the interlineation. I told him it was no use. He insisted on it being done, and I made it."

As to the Maholm deed: " I wrote this deed also. I cannot say whether. the words " *a* 20-*feet,*" interlined, are in my handwriting or not. The word 'alley' is in my handwriting. Shortly after the alteration General Robinson countermanded his instruction to leave alleys opposite other alleys."

Arthur Hobson testified: * * * "The words interlined "*a 20-feet,*" are in the handwriting of Mr. Ramsey. I was street commissioner at the time Taylor Avenue was paved opposite the lot in dispute, or alley. Mr. Morgan stated to me that it was a private alley, and I called on General Robinson to know if it was an alley or private property. He stated that he had no property there—that the alley was laid out for the purpose of those lots—Morgan's lots. * * * In paving Taylor Avenue we put in curb along across the foot of what is claimed was an alley. Mr. Morgan desired me to do this. I then called on General Robinson, and he said the alley was for the benefit of the Morgan property. Morgan stated to me that it was a private alley. He had the lot enclosed as part of his cattle yard. It was so enclosed at the time of the conversation between him and me."

Robert Ray testified: "Am acquainted with the handwriting of John Ramsey. Think the words "*a 20-feet*" are in his handwriting."

The court then admitted the deeds in evidence, and sealed a bill of exceptions for the plaintiffs.

The defendant gave in evidence a deed dated September 21st 1865, from Maholm to Morgan for lots Nos. 268 and 269, and deed dated December 7th 1866, from Morgan to defendant for lots Nos. 268, 269, 271 and 272.

Also proceedings in the Court of Quarter Sessions of Allegheny county, showing a petition representing:—

"That a private alley on lot 270, in Robinson's extension of Buena Vista, in the Second Ward of the city of Allegheny, running from Taylor Avenue north, of the width of 20 feet, and of the depth of 　　feet, between lots Nos. 269 and 271, in said plan of General William Robinson, Jr., has heretofore been granted by deed; that the ownership of said lots and of the soil over which the said alley is laid out is now in Joseph Myers, who is also the owner of all other lots having a right to use said alley; that the same has never been opened and is useless to the community;" and praying "the court to close up and vacate the same," &c.

Also, the decree of the court, August 31st 1867: "That the said lot No. 270, in Robinson's extension of Buena Vista, in the Second Ward of Allegheny City, running from Taylor Avenue north, of the width of 20 feet, between lots 269 and 271 of said plan, shall be and the same is hereby declared vacated."

The plaintiffs in rebuttal gave evidence that "Mr. Myers used the lot as a part of his cattle-yard. There was an open shed on the line of Davis's alley. Morgan fenced in the lots immediately after he bought; it has continued to be fenced in ever since; there was a shed built across the lot; the lot was never used as an alley."

[Robinson v. Myers.]

The plaintiffs requested the court to charge:—

1. That under all the evidence in this case the plaintiffs are entitled to a verdict.

2. That the evidence in respect to the interlineations and alterations in the deeds from Robinson to Morgan and Maholm is not sufficient to show that they or any of them were made with the assent or authority of Robinson, and the jury must reject said interlineations and alterations as unauthorized interpolations.

3. That whether or not the defendant has a right of way over the ground in controversy is immaterial in this action, as the existence of such easement would not prevent the plaintiffs recovering in ejectment the land itself.

4. That, if the defendant Myers ever had any right of way over the ground in controversy it arose on the principle of estoppel from the alleged recitals in Robinson's deeds to Morgan and Maholm, and said deeds did not convey to the grantees therein, any title to the soil of said lot No. 270.

5. That if the jury believe from the evidence that the ground in controversy was never actually opened as an alley, and has never been used as such, but that James Morgan, shortly after his purchase from Robinson, enclosed said ground as part of his cattle yard—fencing said ground at both ends—that he subsequently erected and maintained a shed across said ground, and that the defendant continued so to keep said ground enclosed and fenced, and maintained said shed across it, and this has been the constant use of said ground by Morgan and defendant—any right of way over said ground by virtue of Robinson's deeds must be regarded as extinguished or abandoned.

7. That the aforesaid decree of the Court of Quarter Sessions was inoperative to divest the title of William Robinson, Jr., to the ground in controversy.

These points were all refused.

After recapitulating the evidence the court further charged:

["We have admitted the deeds in evidence in connection with the testimony bearing upon the question of interlineation, and if you are satisfied from all the evidence on the subject that these interlineations were in the deeds at the time they were respectively executed and delivered, or that they were made subsequently with the knowledge and consent of the grantor—Gen. Robinson—we instruct you *pro forma*, that your verdict should be for the defendant.]

"It is in evidence and not denied that the strip in controversy was never used as an alley—that shortly after the sale by Gen. Robinson the lots including the one in controversy were enclosed and used as a cattle-pen, and continue to be so used. The plaintiffs consider these facts material to their right to recover. If you find in favor of the defendant, your verdict will be taken

subject to the opinion of the court in banc as to the right of the plaintiffs to recover under the facts found and admitted, viz. : Whether under the deeds of Gen. Robinson to Morgan and Maholm—and the proceedings in the Court of Quarter Sessions, in connection with these facts, viz. : (that the alley was never accepted and used by the public, or used by private individuals as an alley, and shortly after the sale was enclosed and used in connection with other lots as a cattle-pen), the plaintiffs are entitled to recover in this action ?"

The jury found for the defendant subject to the opinion of the court on the questions of law reserved. The court afterwards entered judgment on the verdict for the defendant.

The plaintiffs took out a writ of error.

They assigned for error :—

1. The admission of the deeds in evidence.

2–7. The refusal of their points.

8. The part of the charge in brackets.

9. Entering judgment for the defendant.

10. Not entering judgment for the plaintiff on the questions reserved.

*M. A. Woodward* and *M. W. Acheson*, for plaintiffs in error.— The plan of "Buena Vista" was part of the defendant's title : Birmingham v. Anderson, 4 Wright 513, s. c. 12 Id. 253; it showed that 270 was a lot not an alley. The proof was that the alterations had not been made when the deed was executed, but had been afterwards made without the grantor's consent. The questions of whether the alterations were made before the execution of the deed or if afterwards with the grantor's consent were submitted without evidence. But the utmost effect of the calls for an alley would be to give to the grantees a right of way over 270, by implication or on the principle of estoppel : O'Linda v. Lothrop, 21 Pick. 232; Washburn on Easements 169; Bellinger v. Burial Ground Society, 10 Barr 137.

The soil under a highway passes, if at all, as parcel of the land; this is a question of intention to be ascertained from desciptions, &c., in the deed : Angell on Highways, sec. 314. Land will not pass as appertenant to land. Nothing could pass with lots but a perpetual easement over 270 : Washburn on Easements 129. The *soil* notwithstanding may be recovered in ejectment : Cooper v. Smith, 9 S. & R. 26; the way being discontinued the lot was free from the encumbrance : Washburn on Easements 196; 3 Kent's Com. 448, 450; Taylor v. Hampton, 4 McCord 96; Crain v. Toy, 16 Barb. R. 184; Coming v. Gould, 16 Wend. 540; Arnold v. Cornman, 14 Wright 361. The defendant's title, if any, was extinguished by the proceedings in the Quarter Sessions.

[Robinson v. Myers.]

*S. Schoyer*, for defendant in error.—Ramsay being a witness to the deed, might be contradicted by the party calling him: 1 Greenlf. Ev., § 443. The jury might infer from the other evidence that he falsified when he said he did not know whether the alterations were in his writing, "when every one in the court-room could have sworn by comparison" that it was his. An alteration in a deed is presumed to be legitimate: Simpson v. Stackhouse, 9 Barr 187; Jordan v. Stewart, 11 Harris 244; 1 Greenlf. Ev., § 564. The question of easement does not arise. When the lots adjoining the alley were conveyed in fee the purchasers took the soil to the middle of the alley: Paul v. Carver, 2 Casey 225; Ball v. Ball, 1 Philada. R. 87; Cox v. Freedly, 9 Casey 130. Streets laid out on a plot are not public until adopted by the public: McCall v. Davis, 6 P. F. Smith 431.

The opinion of the court was delivered, October 9th 1871, by

WILLIAMS, J.—The first question presented by this record arises on the admission in evidence of the deeds to Morgan and Maholm, under which the defendant claims title to the lot in controversy.

When first offered, they were rejected on account of material alterations not noted in the attestation clause, which were apparent on their face. The subscribing witness was then called to account for the alterations, and instead of showing that the interlineation in the deed to Morgan was made before its execution and delivery, his testimony tended to prove that it was made afterwards, without the knowledge and consent of the grantor. He said: "I am a witness to this deed. It is written by me. I made the interlineation of the words 'along an alley.' I made the interlineation at the request of James Morgan after General Robinson had told me to leave alleys opposite the alleys in his plot. It was done after the deed was executed and delivered to Morgan. I had no authority to make the interlineation except by his directing me to leave alleys opposite the alleys in his plan. I was acting as agent for General Robinson in selling lots. The alteration was made very shortly after the deed was delivered to Morgan. I know that Morgan brought the deed back to me after he got it, and wanted me to make the interlineation; I told him it was no use. He insisted on it being done, and I made it." If the interlineation apparent on the face of the deed rendered its appearance suspicious, the testimony of the scrivener and subscribing witness entirely destroyed its character as an instrument of evidence, and it ought to have been rejected. But having been admitted, the jury should have been instructed in accordance with the plaintiff's second point, that the evidence in respect to the interlineations was not sufficient to show that it was made with the assent or authority of the grantor, and the jury must

reject it as an unauthorized interpolation. With respect to the interlineation in the deed to Maholm, the witness said: "I wrote this deed also; I cannot say whether the words 'a twenty-feet,' interlined are in my handwriting or not. The word 'alley' is in my handwriting." The defendant then showed by the testimony of Arthur Hobson and Robert Ray, that they were acquainted with the handwriting of the witness, and that the words "a twenty feet," interlined in the deed, are in his handwriting, and he also showed by the testimony of Hobson, that in 1858 or 1859, he called on General Robinson "to know if the lot in dispute was an alley or private property, and that he stated that he had no property there; that it was laid out for the purpose of these lots, the Morgan lots." It is not easy to see how this testimony relieved the deed from the suspicion that led to its rejection when first offered. It is true, that it tends to show that the interlineation is in the handwriting of the scrivener, but this must have been apparent on inspection of the deed, if, as stated in defendant's paper-book. "Everybody in the court-room would have sworn to it by comparison with the context."

The declaration of Robinson that the alley was laid out for the purpose of the Morgan lots has little or no bearing on the question, whether the interlineation in the deed to Maholm was made before its execution and delivery or afterwards with his knowledge and consent. As it was beneficial to the defendant, the burthen was on him of showing that it was properly made. If it appeared to be written with the same pen and ink as the body of the instrument, the natural inference would be that it was made before the sealing and delivery of the deed. But if it did not appear to be made with the same pen and ink, no such presumption would arise, and other evidence would be required to explain it. The original deed was not produced before us on the argument, and it was not shown by any evidence given on the trial whether the interlineation appeared to be written with the same pen and ink as the body of the deed or not, we cannot therefore say that the court erred in admitting it. Whatever may have once been the rule, the law does not now presume that an interlineation in a deed is a forgery, nor that it was made after the execution of the instrument, but leaves it as a question of fact to be determined by the jury. As was said in Jordan *v.* Stewart, 11 Harris 249, so long as any ground of suspicion is apparent on the face of the instrument, the law presumes nothing, but leaves the question as to the time when it was done to be ultimately found by the jury upon proof to be adduced by him who offers it in evidence.

But a graver question is as to the effect of the deeds, if the interlineations were properly made as found by the jury. Did the deeds, as thus interlined, convey in fee simple the lot in question to the grantees under whom the defendants claim title? They

do not profess to convey any title to the lot, nor any right of way over it. The deed to Morgan conveys lots No. 271 and 272, and the deed to Maholm, lots 268 and 269, and in express terms they convey nothing more. If they convey the right to the use of the lot as an alley, it is by way of estoppel, and not by express grant. The deed to Morgan describes the line between lot No. 271 and the lot in dispute, No. 270, as running " along an alley ;" and the deed to Maholm describes the line between lots No. 269 and No. 270, the lot in controversy, as running along " a twenty-feet alley." But on the recorded plan, which is referred to and recited in both deeds, no alley is laid down between lots 269 and 271, nor is there any alley adjoining either of these lots. The lot in dispute lies between them, and is laid down on the plan as lot No. 270. The plan being referred to in the deed, is as much a material and essential part of the conveyance, and has the same force and effect, as if it were incorporated into the deed : Borough of Birmingham *v.* Anderson, 12 Wright 253 ; and it shows that the closing boundary line of these lots, as called for in the deeds, is a misdescription. Besides, it is admitted that no alley was ever opened or laid out upon or over the lot in dispute. Nor was it ever used as an alley, either by the public or by the owners of the adjoining lots. Shortly after the sale to Morgan, he enclosed it with lots No. 271 and 272, and used the whole enclosure as a cattle-pen down to the time of the trial. The defendant, as we have already said, is not entitled to the use of the lot as an alley by virtue of an express grant of it in either of the deeds. And it is very doubtful whether he is entitled to its use as an alley under the misdescription of the lots granted by the deeds : Commonwealth *v.* McDonald, 16 S. & R. 390. But be this as it may, if the defendant is entitled to the use of the lot as an alley, he is only entitled to it on the principle of estoppel : O'Linda *v.* Lothrop, 21 Pick. 292. And if so, has he anything more than an easement in the lot or right of way over it ? Has he the title to the land in fee simple because the adjoining lots granted by the deeds are described as bounded by " an alley" or a " twenty-feet alley ?" The court below so decided on the authority of Paul *v.* Carver, 2 Casey 223. The doctrine of that case is this : A conveyance of land bounded by the side of the street gives the grantee a title to the centre of it, if the grantor had title to that extent and did not, expressly or by clear implication, reserve it, although the distances set forth in the deed bring the line only to the side of the street ; and if such street be vacated, the grantee will have the right to extend his line to the middle of it : Cox *v.* Freedley, 9 Casey 124. But in this case there was no alley or street by which the lots were bounded. The recorded plan, which is to be taken as a part of the defendant's title, shows that the ground in question is a lot, and not a street. And it is admitted that no

17 P. F. SMITH—2

[Robinson *v.* Myers.]

alley was ever laid out over the lot, or ever used by the public or by private individuals. There is, then, no ground or reason for the application of the rule laid down in Paul *v.* Carver to this case. It would work injustice to the parties; and its establishment as a principle to govern such a case as this would be productive of mischief. The utmost interest, then, that the defendant could take under the deeds was an easement or the right to the use of the lot as an alley. But if the defendant had the right of way over the lot, his act in fencing it up and using it as a cattle-yard, was sufficient to extinguish it: 3 Kent's Com. 449; Taylor *v.* Hampton, 4 McCord 96; Corning *v.* Gould, 16 Wend. 531. But if not extinguished by these acts, it was unquestionably extinguished by the decree of the Court of Quarter Sessions vacating, under the provisions of the Act of May 8th 1854, the private alley over the lot, if any such had been granted by the deeds of Robinson to Morgan and Maholm. The court below, therefore, erred in deciding the reserved question in favor of the defendant.

But in reversing the judgment we cannot direct it to be entered in favor of the plaintiff, for the reason that the verdict is for the defendant. When a verdict is taken subject to the opinion of the court in banc upon questions of law reserved, it should be rendered in favor of the plaintiff; otherwise if the decision be for the plaintiff, no judgment can be entered in his favor. The facts upon which the questions arise should be found by the jury or agreed upon by the parties, and should be distinctly stated, as well as the questions raised upon them; and the judgment to be pronounced upon their solution should also be specified, as in a case stated.

Judgment reversed, and a *venire facias de novo* awarded.