## Anna M. Higgins *v.* Borough of Sharon, Appellant.

*Road law—Practice, C. P.—Proceedings to assess damages for widening and grading.*

Where the grading and widening of a street are done at the same time proceedings for the appointment of viewers, commenced by petition in the common pleas, to assess the damages for both in the one proceeding and by the same viewers or by the same jury on appeal, are proper and regular.

*Laches—Delay in filing viewers' report—Objection must be promptly made.*

An irregularity in filing report of viewers one week after the next term of court following their appointment is cured by defendant's laches in objecting only after more than a year had intervened, during which time defendant had acquiesced in the regularity of the report, and plaintiff had been permitted to go to the expense of preparing for trial. Such objection must be made in reasonable time.

*Vendor and vendee—Deed—Conflicts between monuments and description.*

When there is a conflict between monuments, whether natural or artificial, and the courses and distances named in a deed, the former must control.

*Deed—A map referred to becomes part of the deed.*

Where a map or plan is referred to in a deed it becomes a material and essential part of the conveyance and is to have the same force and effect as if copied into the deed.

*Road law—Dedication by plots referred to and streets designated.*

A call for a street as a boundary which simply has been projected by a municipality, but not opened, does not ordinarily raise a presumption of dedication which will estop the owner from claiming damages when it is opened; but when an owner makes a plot on which spaces are left indicating the dedication of streets not previously projected by the public authorities, and sells lots with reference to the plot, he cannot recall his dedication but leaves the streets to be opened by the proper local authorities at such time as the public interest may require, and of this they are the judges. Such dedication operates as a relinquishment of all claims for damages for the use of the land for street purposes.

*Dedication by sales by plot—Standing fence does not rebut presumption.*

The fact that a fence is left standing, cutting off portions of space allotted and dedicated by plot or plan, referred to in conveyances, until the municipal authorities saw fit to appropriate the land thus dedicated does not rebut the presumption of dedication.

*Vendor and vendee—Executor's powers—Dedication—Estoppel.*

Executors with full testamentary powers of sale may divide land into lots and selling same by reference to plots showing projected street can and will effect a dedication of such streets as fully as their testator could have done; but even if the heirs or beneficiaries had any right to object, the executor's vendee is estopped by his deed in repudiating the action of his vendors or denying their power.

*Vendor and vendee—Parol evidence to explain deed.*

A conveyance being made by reference to a plot which thereby becomes part of the deed it is not competent to explain the plot or draft and the deed by evidence of declarations of the grantor to the surveyor not made in the presence of or communicated to the grantee, nor is it competent for the surveyor to construe the deed, but it is competent to prove by him when the lines were actually run and marked on the ground.

Argued May 11, 1897.  Appeal, No. 52, April T., 1897, by defendant, from judgment of C. P. Mercer Co., Jan. T., 1895, No. 20, on verdict for plaintiff.  Before RICE, P. J., WILLARD, WICKHAM, BEAVER and ORLADY, JJ.  Reversed.

Petition for the appointment of viewers to assess damages for the change of grade in the taking of land.  Before MILLER, P. J.

·It appeared from the evidence that Amelia Munn died tes-

tate, leaving inter alia some real estate in Sharon, Pa., situate on the west side of Sharpsville street.

William Cover was appointed the executor of her will, and by the terms thereof directed to make sale of said real estate "upon such terms and conditions" as he should deem best, "and to make and execute articles of sale or deeds thereof."

Sharpsville street, so far as the evidence shows, had never been legally laid out, and no ordinance relating to the same seems ever to have been enacted by the borough authorities.

It was irregular in width and in front of these properties water would gather and stand until it became foul and offensive smelling.

In order to derive as much money as possible from the sale of said real estate, the executor secured the services of a civil engineer and had the same carefully surveyed and divided into lots.

This survey provided for the straightening and widening of said Sharpsville street to a width of forty feet. A plot of the same was made by the surveyor showing all this, and in which the courses and distances were all marked, as well as the width of said street.

This plot was examined by the plaintiff in this case before purchasing. Her deed was made from it and contains a copy thereof.

After her purchase of the property the borough of Sharon widened said street to the line of the survey marked in said plot and mentioned in said deed and no further. They also changed the grade thereof so as to carry off standing water and otherwise improved the same.

The plaintiff has all the land described in her deed, but she brings this action to recover damages for the taking of a strip five feet wide at one end and four feet wide at the other extending along the east end of said lot, a distance of $38\frac{3}{10}$ feet lying between the east line marked in her deed and the old line of Sharpsville street before it was widened, and also for the change of grade made in said street.

The plan referred to is as follows:

Verdict and judgment for plaintiff for $257.63.    Defendant appealed.

*Errors assigned* were (1.) In refusing to strike off the judgment entered in this case and to quash the proceedings, which motion to strike off and quash was dismissed in the following opinion: " And now Feb. 11, 1896, this motion having been made before the jury was sworn, and having been heard by the court, the same is refused."

The report of the viewers in this case was presented in open court and confirmed nisi on Jan. 26, 1895.

Feb. 6, 1895, the said report was confirmed absolutely. Feb. 8, 1895, judgment was entered on the award of viewers. No exceptions to said report having been filed.

Feb. 20, 1895, the appeal and recognizance of plaintiff was filed.

The case was on the trial list for the second Monday of May, 1895, and at that time the defendant had caused a general appearance to be entered by their attorney, W. C. Haus, Esq., an attorney of this bar.

The case was again on the trial list for the second Monday of December, 1895, and now on this the Feb. list, 1896.

More than a year passed since the report of viewers was presented and ordered filed in open court, confirmed absolutely and judgment entered thereon, no exceptions having been filed.

More than nine months passed since the defendant caused an appearance to be entered, during all of which time the defendant acquiesced in the regularity of the report.

The plaintiff has gone to the expense of preparing for trial, and now the defendant for the first time objects to the regularity of the proceeding and asks to quash the petition for the reason " that the report of the viewers was not filed at the next term of court following their appointment."

We think this objection comes too late. If this was an irregularity, the defendant claiming that the report should have been filed between January 7 and 19, 1895, we think the defendant has waived it by their acquiescence in the regularity of the report since as long as the second week in May, 1895, when they voluntarily appeared in court: Clarke v. McAnulty, 3 S. & R. 364 ; Weidner v. Matthews, 11 Pa. 336 ; Beidman v. Vanderslice, 2 Rawle, 334.

After the defendant had notice of the filing of the report of viewers, assuming that it was filed one week after the term had closed, they were bound to make any objection to the report they desired to make within a reasonable time. In the opinion of the court they have not done this. On the second week in May, 1895, they knew all they now know.

For these reasons the motion is refused.

(2) In striking out the answer of Mr. Nichols, the engineer, to a question asked and refusing the offer of the defendant borough, which question is as follows: " Q. What did Mr. Cover

tell you in regard to the making of this survey and fixing the line along the street?"

(3) In not refusing the point submitted by the plaintiff, which point and answer are as follows: "The court is respectfully requested to charge the jury as follows: That under the plaintiff's deed in evidence, her title runs into the center of Sharpsville street, and if the taking possession of the strip off the front of plaintiff's lot in 1893 was the first actual appropriation of this strip for public street purposes; that is, if plaintiff and her predecessors in title had for all time previous held actual and continuous possession of said strip until the actual taking of the same in 1893, then the jury must take into consideration the taking of this strip of land in fixing the plaintiff's damage in this case. *Answer:* Answered in the general charge."

(4) In his answer to defendant's point, which point and answer are as follows, to wit:

That the plaintiff cannot recover for the taking of land that is not embraced within the lines of her deed. A deed has been put in evidence giving the courses and distances, which appear by a plot that has been offered in evidence and the court is asked to instruct the jury that the plaintiff is not entitled to recover for land not embraced in the same. *Answer:* Answered in the general charge.

(5) In charging the jury as follows, to wit: We say to you, as a question of law, that under the evidence the plaintiff's title runs to the center of Sharpsville street, and if you find as a fact that the borough of Sharon did in 1893 take a strip of land off the end of the plaintiff's lot abutting on Sharpsville street four or five feet wide and extending along the entire front of her lot, and if you farther find, that up to 1893 the plaintiff and her predecessors in title, had for all time occupied and had actual and continuous possession of this strip, and that the said strip was never before appropriated for street purposes, then you should take into consideration the taking of this strip of land in considering whether or not plaintiff is entitled to any damages. That is, if you find that plaintiff did own this strip of land, and those under whom she claims title owned it, and occupied it and had the actual possession of it, then her deed entitled her to the land to the center of the street; and you are authorized to consider that item, the strip of land as an element

of damage in case you find the taking of it did damage the plaintiff. You will observe therefore, gentlemen, that the plaintiff's claim embraces two elements of damages : first, by the alleged changing of the grade, and the second, by the alleged taking of the strip of land, 38$\frac{4}{10}$ feet long, four to five feet wide, and abutting on Sharpsville street.

(6) In charging the jury as follows, to wit: Then as to the second item of plaintiff's claim, the alleged taking of the strip of land; if you find that the borough did widen out the street in front of plaintiff's property four or five feet, and if you find that this was the first actual appropriation of this strip by the borough for public street purposes, and that for all the time previous the plaintiff and her predecessors in title had actual and continuous possession of this strip, you will then say whether or not the plaintiff is entitled to any damages on this part of her claim, and if so how much.

*W. H. Cochran*, with him *William C. Haus* and *Tanner & Whitla*, for appellant.—The viewers must report to the term next succeeding that at which they are appointed : Ferry v. Borough of South Chester, 2 Del. 147. Statutory remedies must be strictly construed: White v. Borough of McKeesport, 101 Pa. 394 ; Borough of Beltzhoover v. Gollings, 101 Pa. 293.

When one sells and conveys lots according to a plan which shows them to be on streets, he must be held to have stamped upon them the character of public streets. This is sufficient to prove a dedication of the street to public use. Not only can the purchasers of lots abutting thereon assert this character of public streets, but all others in the general plan may assert the same. The proprietor is in no condition to revoke this dedication afterwards: In re Opening of Pearl Street, 111 Pa. 565 ; Quicksall v. Philadelphia, 177 Pa. 301. The dedication of streets by recording a plan and selling lots according to the plan operates as a relinquishment of all claims for damages for the use of the land within the line of the streets for street purposes, and no claim for damages can be sustained unless the streets are within the protection of the Act of May 9, 1889, P. L. 173 : Quicksall v. Philadelphia, 177 Pa. 301.

*A. W. Williams*, with him *Q. A. Gordon*, for appellee.—As

to the plaintiff's first assignment of error, the examination of the cases cited by the learned judge clearly sustained his ruling. See also Clark v. McAnulty, 2 S. & R. 364.

The Act of February 24, 1834, P. L. 70, was not intended to break descents, or work a conversion of real estate over which a naked power to sell had been given to executors : Chew v. Nicklin, 45 Pa. 84.

These cases establish the doctrine that the grantee of a town lot abutting on a street opened to public use takes a fee to the center thereof, although the description adopts the sides of the street as the boundary : Cox v. Freedley, 33 Pa. 124, and Paul v. Carver, 26 Pa. 223.

Under the Act of May 24, 1878, P. L. 129, the plaintiff had clearly the right to recover damages for the land taken, as well as for the change of grade, in these proceedings : Brady Street, 99 Pa. 591.

OPINION BY RICE, P. J., July 23, 1897 :

This proceeding was commenced by a petition to the court of common pleas for the appointment of viewers to assess the plaintiff's damages caused by the widening and grading of Sharpsville street. The defendant's motion to quash the proceedings was properly overruled for the reasons given by the learned trial judge. And as the grading and widening of the street were done at the same time, we see no reason to doubt that the damages for both could be assessed in one proceeding and by the same viewers, or by the same jury on appeal. See Change of Grade in Plan 166, 143 Pa. 414; Righter v. Phila., 161 Pa. 73. We come then to the main question in the case, which is, whether the plaintiff was entitled to recover damages for the land taken in widening the street.

When there is a conflict between monuments, whether natural or artificial, and the courses and distances named in a deed, the former must control. It is also the general rule of law, well established by authority and founded in true policy, that a conveyance of lands bounded on a highway, gives the grantee a title to the middle of the road, if the grantor himself had title to it. and did not expressly or by clear implication reserve it: Paul v. Carver, 24 Pa. 207 ; Same v. Same, 26 Pa. 223 ; Cox v. Freedley, 33 Pa. 124 ; Transue v. Sell, 105 Pa. 604 ; Ott v.

Kreiter, 110 Pa. 370 ; Firmstone v. Spaeter, 150 Pa. 616 ; Bliem v. Daubenspreck, 169 Pa. 282. A call for a street as a boundary which has simply been projected by a municipality, but not opened does not ordinarily raise a presumption of dedication which will estop the owner from claiming damages when it is actually opened : Brooklyn Street, 118 Pa. 640 ; Wayne Ave., 124 Pa. 135 ; Bellefield Ave., 2 Pa. Superior Ct. 148 ; Quicksall v. Phila., 177 Pa. 301 : Lehigh St., 81* Pa. 85. But an owner who makes a plot on which spaces are left indicating the dedication of roads or streets not previously projected by the public authorities, and sells lots with reference to the plot, cannot recall his dedication, for he leaves the streets to be opened by the proper local authorities at such time as the public interest may require, and of this they are the judges. The right passing to the purchaser is not the mere right that he may use the street thus dedicated, but that all persons may use it. The dedication thus established operates as a relinquishment of all claims for damages for the use of the land for street purposes : Quicksall v. Philadelphia, 177 Pa. 301 ; McCall v. Davis, 56 Pa. 431 ; Davis v. Sabita, 63 Pa. 90 ; Trutt v. Spotts, 87 Pa. 339 ; Transue v. Sell, 105 Pa. 604 ; In re Pearl Street, 111 Pa. 565 ; Elliott on Roads, 89 ; Trickett's Penna. Road Law, 432, 604 ; Davaston v. Payne, 2 Sm. L. Cases, 140 (American notes). No plausible reason can be suggested why the same principles should not apply where lots are sold by a plot or plan plainly indicating an unequivocal intention to dedicate land for the widening of an existing road or street in front of them. Is this not such a case ? The plaintiff's deed calls for the west line of Sharpsville street as the boundary on the east, and the lands of the Sharon Ry. Co. as the boundary on the west. If there were nothing further in the case there would be no question that although the actual length of the side lines of the lots thus described and conveyed is greater than the measurement given in the deed the call for Sharpsville street would control, and the plaintiff's title would extend to the center of the street, as it then existed. But this is not the whole description ; the lot is further described as " purpart No. 3, as shown by survey and plot of James H. Nicolls, dated October 4, 1892."

It appears that the lot was part of larger tract of which Amelia Munn died seized ; that by her will she directed her

executors to make sale of her real estate "on such terms and conditions as they may deem best, and make, execute and deliver articles of sale and deeds therefor;" that the acting executor caused a survey and plot of land to be made, whereby it was divided into three purparts, the first of which he conveyed to Carrie B. Munn, the second to James Fitzgerald, and the third to the plaintiff. On the plot referred to in the deed—a copy of which was attached to and recorded with the deed to Carrie B. Munn—the lots are described as fronting on Sharpsville street which is represented as being forty feet wide; whereas in fact,—and this is also shown by the plot—the street as marked by the fences was less than forty feet wide at that point. In other words in plotting the land the executor cut off from the front of the track a strip of land five feet wide at one end and two feet at the other end, and added the same to the street as it actually existed upon the ground, and thus made it forty feet wide. When a map or plan is thus referred to it becomes a material and essential part of the conveyance, and is to have the same force and effect as if copied into the deed: Com. v. McDonald, 16 S. & R. 390 ; Birmingham v. Anderson, 48 Pa. 253 ; McCall v. Davis, 56 Pa. 431; Davis v. Sabita, 63 Pa. 90; Robinson v. Myers, 67 Pa. 9; Trutt v. Spotts, 87 Pa. 339; Schenley v. Pittsburgh, 104 Pa. 472. Construing the draft as if copied into the deed and as part of the description of the land sold, and all apparent inconsistency between the courses and distances and the calls vanishes; for it then becomes clear that the call was not for the west line of Sharpsville street as it then existed and was marked by the fences but for the west line of the street as widened by the grantor and plotted on the draft. The draft, carefully drawn to a scale which was incorporated with the deed for the very purpose of definitely fixing the location of this as well as the other lots, shows as plainly as if the words had been written in the deed itself that there is a strip of land lying between those two lines which was not intended to be included in the purparts into which the larger lot was divided. This precludes the idea that the grantor supposed them to be identical, or was mistaken as to the actual width of the street. Presumably he did not intend to retain title to this strip, and thus shut off his grantees from access to the street, but to dedicate it to public use, as

part of the highway.   The fact that the fence was left standing until the municipal authorities saw fit to appropriate the land thus dedicated does not rebut this presumption: McCall v. Davis, 56 Pa. 431; Ferguson's Appeal, 117 Pa. 426.

But it is insisted that the right to dedicate lands to public uses belongs only to the owner of the fee; and such is the general rule of law.   Thus a dedication by a tenant for years, or the owner of a particular estate, will not bind the reversioner or remainderman.   It is to be observed however that under our statute the executor to whom is given by the will a naked authority only to sell real estate takes and holds the same interest therein, and has the same powers over such estate for all purposes of sale and conveyance, and also of remedy by entry, by action, or otherwise, as if the same had been devised to them to be sold, saving, of course, to the testator, his right to direct otherwise: Act of February 24, 1834, P. L. 70.   Here the power was to sell upon such terms and conditions as the executors might deem best, and we are by no means willing to concede that they might not divide the land into town lots and open a way across or in front of them if in the exercise of their discretion the land could thus be sold for a better price.   At all events it is difficult to see upon what principle the purchaser of one of the lots who has taken, subject to the easement can defeat it and appropriate the land to himself by denying the power of the executor.   As was pointed out in a very well considered New Jersey case, executors having power to sell lands by the will of the owner in fee, represent their testator and may convey his whole estate, and the purchaser by accepting the deed consents to the limitations and qualifications therein contained. "There seems to be little doubt" say the court, "as to the powers of executors, in selling lands under a general power in the will, to divide it into lots and to lay out streets through it, and thus create easements of rights of way in the several purchasers, if the estate will be benefited by such disposition of the property."   After citing numerous analogous cases in support of this proposition the court proceeds: "But whatever the right of the heirs or beneficiaries under the will of the deceased might have been to have enjoined the executors from converting part of the estate into streets, the defendant is estopped by his deed from repudiating their action or denying their power:" Earle v. Mayor, etc., 38 N. J. L. 47.

Upon the whole case, as presented by the evidence, we conclude that there was a dedication of the strip of land lying between the fence line and the lot lines, as described in the deed and draft, to public use as part of the highway, and, therefore, that the plaintiff was not entitled to recover damages for the taking thereof by the borough.

In view of the foregoing conclusion the ruling complained of in the second assignment of error becomes unimportant. But to prevent misapprehension on another trial, we remark that it was not competent to explain the draft and the deed by evidence of declarations of the grantor to the surveyor not made in the presence of or communicated to the grantee. The court committed no error in striking out that testimony. Nor was it competent for the surveyor to construe the deed; but it was competent to prove by him where the lines were actually run and marked on the ground if they were so marked. If that is what the defendant meant by its offer to prove where the " lines were located on the ground " the evidence was competent.

The judgment is reversed and a venire facias de novo awarded.