# Holland *v.* Hayes, Appellant.

*Deed—Plan of lots—Marks on ground—Damages—Arbitration—Adverse possession—Findings of fact.*

1. Where a map or plan is referred to in a deed, it becomes a material and essential part of the conveyance, and is to have the same force and effect as if copied into the deed. If there are no marks on the ground indicating the actual work of the surveyor in laying out the lots indicated on the plan, the location of them as the plan requires, will be considered the true location.

2. Where in an action of ejectment the parties agree that the land in dispute was derived by purchase from a common source, the question of adverse possession does not arise.

3. Where facts found by a referee are mere deductions from undisputed testimony or from other facts found from the testimony, they are given no greater weight than the referee's findings of law.

4. If parties from misapprehension, adjust their fences and exercise acts of ownership in conformity with a line which turns out not to be the true boundary, this will not amount to an agreement or be binding as the assent of the parties.

5. Where an owner of land sells a lot according to a map or plan and three years thereafter the surveyor of the grantor, without the knowledge of, or the presence of, or at the instance of the grantee, drives iron pins into the ground as indicating boundary lines, the action of the surveyor will not govern the boundary as against the map or the plan.

Argued March 3, 1909. Appeal, No. 1, March T., 1909, by defendant, from order of C. P. Lackawanna Co., Jan. T., 1902, No. 338, dismissing exceptions to report of referee in case of Mary Jane Holland and Joseph Holland v. Mary Hayes. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Reversed.

Exceptions to report of referee, William W. Lathrope, Esq.

The facts are stated in the opinion of the Superior Court.

The plaintiffs filed the following exceptions to the report of the referee:

5. The learned referee erred in his eleventh finding of fact, which is as follows:

"The northeasterly line of said lot No. 4, block No. 98, is properly located on the line of the southwest wall of the present foundation of defendant's barn."

The Court: The exceptions to the report of the referee are overruled and we direct judgment to be entered in accordance with the recommendation of the referee. [5]

6. The learned referee erred in part of his answer to the plaintiffs' fourth request for finding of fact, which portion of said answer is as follows:

"The southwest wall of the defendant's barn and the part of the old fence left standing until 1901 constitute in my view the division line as substantially recognized by both parties until 1901." [6]

31. Request: The disconnected portion of the fence erected and maintained by the defendant for her own convenience on her own land from near the rear of her front house to near the rear of her barn, cannot in any sense form a consentable line to define the boundary between her lot and the lot of the plaintiffs. *Answer:* If the fact assumed in this proposition were true and there were no other material facts in the case, the proposition would be correct, but in my opinion the defendant by her acts and declarations made this fence and the southwesterly wall of her barn a consentable line between her lot and the lot of the plaintiffs.

Exception: The referee erred in refusing to affirm defendant's eighth proposition for conclusion of law. [9]

28. Request: The fact that Joel Amsden at the instance of the plaintiff may have driven iron pins in the ground on or near the lot lines of the plaintiffs' possession in block 98 in the year 1867 (about three years after the Lackawanna Iron and Coal Company had by contracts sold to the plaintiff's lot No. 4 and to Catharine Roland, one of the defendant's predecessors in title, lot No. 3 in said block) cannot affect the right of the defendant to claim and retain possession of the whole of said lot No. 3 as owner thereof up to the true division line between said lots 3 and 4 and according to the Lackawanna Iron and Coal Company's plot of Scranton, especially in view of the fact that the evidence fails to show that Catharine Roland,

William McCoy, or the defendant had any knowledge or information of the existence or location of said pins.

Ruling of the referee: This is affirmed, with this qualification, to wit, that the location of said line between said lots 3 and 4 by Joel Amsden, the surveyor of the Lackawanna Iron and Coal Company, must govern rather than the plot of the said company.

Exception: The referee erred in his qualification affirming the defendant's fourth proposition for conclusion of law, which qualification is as follows: ,

"The location of said line between said lots 3 and 4 by Joel Amsden, the surveyor of the Lackawanna Iron and Coal Company, must govern rather than the plot of said company." [10]

*Errors assigned* were in overruling fifth, sixth, twenty-eighth and thirty-first exceptions.

*H. A. Knapp*, with him *C. C. Donovan* and *C. B. Little*, for appellant.

*Samuel B. Price*, for appellees.

OPINION BY RICE, P. J., July 14, 1909:

This action of ejectment was for a strip of land two and one-half feet wide and about 135 feet deep. As shown by the writ, the dispute is over the division line between lots No. 3 and No. 4 in block 98 of the Lackawanna Iron and Coal Company's plot of the city of Scranton. The paper titles under which the parties respectively claim were derived from the Lackawanna Iron and Coal Company in 1864, and in their inception the plaintiffs' lot was described, in part, as lot No. 4 in block No. 98 of the Lackawanna Iron and Coal Company's plot of lots, and the defendant's lot as lot No. 3 in the same block of the same plot. Where a map or plan is thus referred to, it becomes a material and essential part of the conveyance, and is to have the same force and effect as if copied into the deed: Commonwealth v. McDonald, 16 S. & R. 390; Birmingham v. Anderson, 48 Pa. 253; McCall v. Davis, 56 Pa. 431; Davis v.

Sabita, 63 Pa. 90; Robinson v. Myers, 67 Pa. 9; Trutt v. Spotts, 87 Pa. 339; Schenley v. Pittsburg, 104 Pa. 472; Higgins v. Sharon Boro., 5 Pa. Superior Ct. 92. See also Shattuck v. Cunningham, 166 Pa. 368, and cases cited by the referee on pp. 376–377. In the absence of evidence of marks on the ground, at the time Michael Holland and defendant's predecessor bought, indicating the actual work of the surveyor in laying out the lots, the location of them as the plot requires would be the true location. And unless something has occurred since to change the original division line as thus ascertained, or to estop the defendant from claiming up to it, it must control the present controversy.

Early in the trial it was agreed by the parties that the only title which either party has or claims to the land in dispute has been derived by purchase from a common source, to wit: from the Lackawanna Iron and Coal Company, which company was seized in fee simple of said land May 2, 1864. The learned referee properly held that under this agreement the question of title by adverse possession does not arise. It is further to be noticed that a claim of title by adverse possession, if it was ever the intention of the plaintiffs to make it, would not be supported by the findings of fact or the evidence.

We need not take up time in discussing the question of estoppel by acquiescence in a wrong boundary line. The learned referee properly held in answer to a point put by the defendant that this question did not arise under the evidence.

The next question to be considered arises out of the eleventh finding of fact which reads: "The northeasterly line of said lot No. 4 block 98 is properly located on the line of the southwest wall of the present foundation of defendant's barn." This finding is in accordance with the plaintiffs' contention, and if correct sustains the judgment in their favor. In general, the findings of fact of a referee appointed under the local act of 1869 or the general acts of 1874 and 1889, based on his belief as to the credibility of the witnesses and the weight to be given to their testimony has the same conclusiveness as a verdict of a jury, and will not be disturbed except for manifest error. Especially is this true in the appellate court where the findings

have been approved by the common pleas. But, as pointed out in Grauel v. Wolfe, 185 Pa. 83, "when the facts found are mere deductions from undisputed testimony, or from other facts found from the testimony, they are given no greater weight than his findings of law." This rule is plainly applicable to the present case. Further on in his report will be found the reasons which, we are warranted in inferring, led the referee to the conclusion that the line is properly located on the line of the southwest wall of the present foundation of the defendant's barn. As appears by the ninth assignment of error the defendant requested a finding that the disconnected portion of the fence erected and maintained by the defendant for her own convenience on her own land from near the rear of her front house to near the rear of her barn could not in any sense form a consentable line to define the boundary between her lot and the lot of the plaintiffs. To this the learned referee answered as follows: "If the fact assumed in this proposition were true and there were no other material facts in the case, the proposition would be correct, but in my opinion the defendant by her acts and declarations made this fence and the southwesterly wall of her barn a consentable line between her lot and the lot of the plaintiffs." Turning now to the facts upon which this conclusion as to a consentable line is rested, we find them stated as follows in the referee's sixth finding: "When Michael Holland bought said lot number four (4) there was a fence between his lot and said lot number three (3) then owned and occupied by' Catharine Roland. Lot number four (4) had been occupied by one Casey, apparently a tenant or squatter. Holland desiring to build a new house, the Lackawanna Iron and Coal Company sent Joel Amsden, their surveyor, to locate his lines. Amsden put a pin down on the northeasterly and southwesterly sides of his lot. This was done in 1867. The pin on the northeasterly side seems to have been put down on the line of said fence. And some time (the evidence does not show when) a barn was built on the rear of lot number three (3), and the southwest side of the barn seems to have been built on the line of this fence. The roof boards of the barn projected about two and one-half (2½) feet over on

the land claimed by the plaintiffs. About 1899, the defendant, then the owner of lot number three (3), had a foundation wall built under said barn. The workmen found an iron peg under the barn. The defendant said that must be right, and under her directions, the southwest side of the foundation wall was built on a line with said peg. The old fence ran from the westerly corner of said barn toward the front. Portions of it were rebuilt from time to time in the same location. As repaired and rebuilt, it stood on the same line until it was torn down by the defendant early in 1901. According to the possession taken and held by Holland until the time said fence was torn down, he had a width of forty (40) feet and possibly a few inches more, and according to the possession taken and held by the defendant she also had a width of forty (40) feet." In connection with this there should be had in view the finding that there was a mixed possession, the eaves of the defendant's barn extending over onto the lot in dispute, and the defendant and her tenant using part of it as a dumping ground for coal. We do not question the correctness of the foregoing findings of fact, but we are unable to assent to their sufficiency to warrant the deductions drawn from them. What the defendant said was to her own workmen, and although it was admissible in evidence it did not, either of itself or in connection with her acts, create an estoppel, nor amount to the establishment of a consentable line. If parties, from misapprehension, adjust their fences, and exercise acts of ownership in conformity with a line which turns out not to be the true boundary, this will not amount to an agreement, or be binding as the assent of the parties: Perkins v. Gay, 3 S. & R. 327. In the same case Chief Justice GIBSON said of a consentable line: "The establishment of this kind of boundary is always a matter of compromise, in which each party supposes he gives up for the sake of peace something to which in strict justice he is entitled. There is an express mutual abandonment of their former rights, upon an agreement, that whether they be good or whether they be bad, neither is to recur to them on any pretense whatever, or claim anything that he does not derive from the terms of the agreement. Each takes his chance of obtaining an equiv-

alent for everything he relinquishes, and if the event turn out contrary to his expectations, so much the worse for him. If there be no intention of fraud, no unfair dealing, and neither party has more knowledge of the fact misconceived, than the other had, the contract will bind." In Hagey v. Detweiler, 35 Pa. 409, WOODWARD, J., speaking of the same subject said: "But, I repeat, the parties to a consentable line intend no conveyance by surrender or otherwise. For the sake of peace and good neighborhood, they agree that a doubtful fact shall be ascertained and indicated in a particular manner; and the practice of this court has been to encourage such compromises." In Culver v. Hazlett, 13 Pa. Superior Ct. 323, our Brother BEAVER speaking of the term consentable line said: "This is a technical term, the basis of which is a dispute between adjoining owners and the compromise of such dispute by a line agreed upon between them." We fail to find either of these essentials in the findings of fact or in the evidence.

It appears further that the learned referee was influenced to the conclusion that the line is properly located on the line of the southwest wall of the defendant's barn by the weight and significance which he accorded to the action of Joel Amsden. This is brought out by the defendant's fourth proposition of law and the referee's answer thereto, which we quote: "The fact that Joel Amsden at the instance of the plaintiff, may have driven iron pins in the ground on or near the lot lines of the plaintiff's possession in block 98, in the year 1867 (about three years after the Lackawanna Iron and Coal Company had by contracts sold to the plaintiff lot No. 4 and to Catharine Roland, one of the defendant's predecessors in title, lot No. 3 in said block) cannot affect the right of the defendant to claim and retain possession of the whole of said lot No. 3 as owner thereof, up to the true division lines between said lots 3 and 4, according to the Lackawanna Iron and Coal Company's plot of Scranton, especially in view of the fact that the evidence fails to show that Catharine Roland, William McCoy or the defendant had any knowledge or information of the existence or location of said pins. *Answer:* This is affirmed with this qualification, to wit: that the location of the said line be-

tween said lots 3 and 4 by Joel Amsden, the surveyor of the Lackawanna Iron and Coal Company must govern rather than the plot of the said company." When it is remembered that this action of Amsden was three years after the title of the defendant's predecessor had vested, and is not shown to have been taken at her instance or even in her presence or with her knowledge, we fail to see why the line indicated by the pins he set should govern rather than the plot. Certainly not because the Lackawanna Iron and Coal Company's engineer had any authority to locate the line, or to establish a new one which any competent engineer did not have. Instead of the line indicated by the pins set by Amsden governing, we are clearly of opinion the location of the lots according to the plot governed at the time the title to the whole of lot No. 3 vested in the defendant's predecessor and still governs. If, as the defendant claims and as the referee admits the evidence of the surveyors called by her tends to show, the location of the true division line between lots 3 and 4 in block 98 according to the Lackawanna Iron and Coal Company's plot is 160 feet southwest from the center line of Hemlock street and parallel thereto, then the plaintiffs were not entitled to recover. The true inquiry should be, where was the division line between the two lots at the time the parties bought in 1864? That question being determined, the result cannot be altered upon the assumption that a consentable line was subsequently established by the parties or that the action of Mr. Amsden established a new line by which the parties were bound, or that his action governs in the determination of the location of the original line, rather than the plot.

It has been frequently said that the location of a disputed boundary line is a question of fact for the jury. Grant it, yet if the court instructs the jury erroneously as to the method of reaching a conclusion as to the fact this is reversible error. So if a referee, who exercises the dual functions of court and jury, proceeds on a wrong theory in reaching the result, his finding cannot be regarded as conclusive. The report of the learned referee in this case is characterized by painstaking care and eminent fairness, but we are constrained to the con-

clusion that he proceeded upon an erroneous conception of the controlling effect of certain facts. There is no distinct finding as to the true location of the division line in 1864, independently of the supposed establishment of a consentable line and of the controlling effect accorded to action of Mr. Amsden; therefore the case should be remitted to the learned referee, as the act of 1871 directs where justice requires it, to report distinctly upon that controlling question of fact.

The 5th, 6th, 9th and 10th assignments of error are sustained, the judgment is reversed and the record is remitted to the court below with direction to commit the report to the referee for the purpose indicated in the foregoing opinion.